KITCHENS, PRESIDING JUSTICE, FOR THE COURT:
 

 ¶ 1. A DeSoto County jury convicted Everett Moore of second-degree murder for shooting and killing Norris Smith. The Circuit Court of DeSoto County, Mississippi, sentenced Moore to thirty years' imprisonment. We reverse Moore's conviction
 and sentence and remand the case for a new trial because the trial court committed reversible error in denying Moore's proposed circumstantial evidence jury instruction.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On September 29, 2015, at 12:07 p.m., Officer Walter Medford of the Olive Branch Police Department responded to reports of an accident with injuries. Upon arrival at the scene, Officer Medford observed a white Nissan Altima that had collided with a building. Officer Medford testified that he "noticed a black male ... in the driver's seat slumped over the arm rest" who was unresponsive and who "appeared to have a gun shot wound to his head." The window on the driver's side "was broken out." Investigator Roger Hutchins, who is Chief Inspector of the Detective Division of the DeSoto County Sheriff's Department, testified that a badge was found under the driver's seat of the vehicle which identified the victim as Norris Smith. Investigator Hutchins interviewed Smith's wife, who, "right off the bat," said that the shooter was Moore. Over defense counsel's hearsay objection, Investigator Hutchins testified that Smith's wife stated that "there had been an ongoing problem with Mr. Moore accusing Norris Smith, the victim, of having an affair with his wife."
 

 ¶ 3. Because the surrounding area where Smith's vehicle was located is heavily industrialized, the DeSoto County Sherriff's Department was able to obtain video surveillance footage from View, Inc.; Anda Pharmaceuticals; McKesson Pharmaceutical Distribution; Syncreon Security Technology; and Williams-Sonoma.
 
 [1]
 
 Detective Steve English of the Criminal Investigations Division of the DeSoto County Sheriff's Department testified that he assisted in gathering and reviewing all surveillance video footage pertinent to the investigation. According to Detective English, the Syncreon surveillance video footage from September 29, 2015, captured Norris Smith, who that same day had begun working at Syncreon Security Technology, coming out of the building where he worked during the lunch hour (some time between 11:38 p.m. and 12:00 p.m.) and getting into a Nissan Altima which belonged to his wife. The Syncreon surveillance video footage then showed Moore's white SUV pulling in behind Smith's vehicle. According to the surveillance video footage and the testimony of Detective English, at approximately 12:00 p.m., Moore exited his SUV and approached the driver's side of Smith's vehicle. Moore leaned on Smith's vehicle and appeared from the surveillance video to be "having some sort of conversation with [Smith]." After their brief conversation concluded, Moore returned to his SUV and "proceeded to drive west through the parking lot."
 

 ¶ 4. Detective English also took a number of "screen captures of the images that are shown of the surveillance video." That series of screen captures-still photographs of images from various surveillance videos-was received in evidence as Exhibit 29. According to Detective English's interpretation, the screen captures show that Moore, driving west through the Syncreon parking lot, stopped his vehicle briefly. Smith's vehicle then exited Syncreon's parking lot onto Kirk Road. Detective English opined that, "[o]nce [Moore] sees that Mr. Smith has left out the opposite entrance, he starts proceeding to the west exit of Syncreon's property." After Smith's vehicle had driven past, according to Detective English, Moore then drove
 out of the Syncreon parking lot and onto Kirk Road.
 

 ¶ 5. Detective English testified that the screen captures from the Anda Pharmaceutical surveillance show "both vehicles side by side on Kirk Road ...." According to Detective English, the screen captures show Smith's "vehicle ... coming into contact with the curb on the right and Mr. Moore ... slowing down his actions, backing up behind the vehicle to allow Smith's vehicle to keep going forward ... on Kirk Road." The next screen capture, Detective English testified, shows Smith's vehicle "bounce[ ] off of that right curb and [ ] driv[e] down the roadway uncontrollably as Mr. Moore is following behind."
 

 ¶ 6. Detective English described the Anda Pharmaceutical surveillance video, which he said showed "Mr. Smith's vehicle slowly come into the intersection almost striking [an] orange 18-wheeler [which] had a green light at the time. Mr. Smith's vehicle went through the intersection, over the curb and down the embankment where it came to a final rest at Prime Automotive."
 

 ¶ 7. Various witnesses testified about what they had observed. Ronnie Schuldt said that, as he was driving south on Polk Lane and approaching the intersection with Kirk Road, he was prevented from continuing through the intersection, despite having a green light: "I slowed down and stopped or almost stopped, and the car continued through the intersection heading west and drove up over the curb and then started down; and there was an embankment that goes down to the [Prime Automotive] building." Schuldt, who got out of his own vehicle and walked down the embankment to the driver's side of the car, stated that he saw an unresponsive person slumped over the console with an apparent head wound and that the driver's side window had been shattered. A Prime Automotive employee, Esau Fant, testified that he heard two gunshots and watched a white Altima drive through the intersection and coast down to the Prime Automotive plant. He saw the broken glass and saw that the driver had been shot.
 

 ¶ 8. Jonathan Young, an employee of View, Inc., testified that he had turned left onto Polk Road off Kirk Road and "was almost rear ended by a white SUV." Young continued that the SUV, which had a Benton County tag, passed his vehicle in a turn lane and then ran a red light. Young testified that Moore, the defendant, was the person he observed driving the SUV.
 

 ¶ 9. Nine to ten hours after the shooting, Moore turned himself in to the police. After reading Moore's
 
 Miranda
 

 [2]
 
 rights to him and obtaining a written waiver, Investigator Hutchins interviewed Moore. The audio recorded interview was played for the jury. In the interview, Moore admitted having been in the Syncreon parking lot. Moore referenced a text message between his wife and Smith.
 

 ¶ 10. Dr. Brent Davis, a deputy chief medical examiner with the office of the Mississippi State Medical Examiner, who was tendered by the State and accepted by the trial court as an expert in forensic pathology, testified that his colleague, Dr. Lisa Funte, actually performed the autopsy but she was unavailable to testify. Dr. Davis testified that he had reviewed and concurred with Dr. Funte's conclusions following Smith's autopsy. He stated that, "[i]n our office, currently all homicides are reviewed and signed off on by each pathologist in the office." Dr. Davis testified that the cause of Smith's death was "[m]ultiple gunshot wounds" and that the manner of Smith's death was "homicide." Moore did
 not object to any of Dr. Davis's testimony or evidence except for photographs the State offered through him that Moore argued were gruesome and would inflame the jury. The court admitted them, overruling Moore's objection.
 

 ¶ 11. A DeSoto County grand jury had indicted Moore for murder but the jury found Moore guilty of second-degree murder. Moore sought a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied. Moore was sentenced to a term of forty years, thirty years to be served in the custody of the Mississippi Department of Corrections and the remaining ten years to be served on post-release supervision. Moore timely filed a notice of appeal.
 

 ¶ 12. Moore argues on appeal that: (1) the trial court erred by giving a second-degree murder instruction that was not supported by the evidence; (2) the trial court erred in refusing the circumstantial evidence jury instruction Moore had sought; (3) the trial court committed plain error by allowing a forensic pathologist to testify about an expert opinion which was not his own; and (4) the trial court erred by admitting hearsay evidence. We address only the dispositive question of whether the trial court erred in refusing Moore's tendered circumstantial evidence instruction.
 

 ANALYSIS
 

 ¶ 13. The State produced no confession or eyewitness to the shooting. Moore proposed a circumstantial evidence jury instruction, but the trial court declined to give it. Moore argues on appeal that he was entitled to a circumstantial evidence instruction.
 

 ¶ 14. This Court reviews a grant or denial of jury instructions for abuse of discretion.
 
 McInnis v. State
 
 ,
 
 61 So.3d 872
 
 , 875 (Miss. 2011). Further, jury instructions "must be read as a whole to determine [whether] they fairly announce the law, and they must be supported by evidence."
 

 Id.
 

 (internal citations omitted).
 

 ¶ 15. Moore contends that, under
 
 Stringfellow v. State
 
 , a circumstantial evidence instruction " 'should be given only when the prosecution can produce neither eyewitnesses [nor] a confession to the offense charged.' "
 
 See
 

 Stringfellow v. State
 
 ,
 
 595 So.2d 1320
 
 , 1322 (Miss. 1992). The State responds that Moore was not entitled to a circumstantial evidence jury instruction because it had adduced direct evidence of Moore's guilt:
 

 The video tape shows Moore's car and its relation to the victim's car at the exact place where the shots were fired as evidenced by the glass fragments and shell casings found at that location. An eye witness identified Moore as the one fleeing the scene and another eye witness described how the victim's car appeared to lose control and go off road until it came to rest against the side of a building.
 

 ¶ 16. But in
 
 Burleson v. State
 
 , this Court held that, "[w]here the State 'is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged,' the defendant is entitled to an instruction requiring the jury to 'exclude every other reasonable hypothesis other than that of guilt before a conviction can be had.' "
 
 Burleson v. State
 
 ,
 
 166 So.3d 499
 
 , 509 (Miss. 2015) (quoting
 
 Mack v. State
 
 ,
 
 481 So.2d 793
 
 , 795 (Miss. 1985) ;
 
 Pettus v. State
 
 ,
 
 200 Miss. 397
 
 , 411,
 
 27 So.2d 536
 
 , 540 (1946) ). This Court defined "gravamen" as the " 'substantial point or essence of a claim, grievance, or complaint.' "
 
 Burleson
 
 ,
 
 166 So.3d at 509
 
 (quoting
 
 McInnis
 
 ,
 
 61 So.3d at
 
 876 ). Further, the Court recognized that "[d]irect evidence ... 'must directly
 and not by inference implicate the accused and not just show that there has been a crime.' "
 
 Burleson
 
 ,
 
 166 So.3d at 509
 
 (quoting
 
 Price v. State
 
 ,
 
 749 So.2d 1188
 
 , 1194 (Miss. Ct. App. 1999) ).
 

 ¶ 17. In the present case, the State has produced neither Moore's confession nor an eyewitness to the gravamen of the offense charged. Here, the gravamen of the crime is the actual shooting of Smith. To remove this case from the circumstantial evidence realm, the State bore the burden of adducing evidence to show directly, and not merely by inference, that Moore shot and killed Smith. This is true, no matter how compelling the inference may be. The State claims that Moore's fingerprints on Smith's car, the video evidence of the vehicles, the broken glass and shell casing, the witness who observed Moore driving past him at a high rate of speed, and the other videos amount to direct evidence that Moore shot Smith. An inference that Moore shot Smith does arise from the evidence. But evidence that implicates the defendant by inference is circumstantial evidence, without regard to how persuasive the inference appears to be. Moreover, the sum of circumstantial evidence, however great it may be-and although often it is sufficient to sustain a conviction-never becomes direct evidence.
 

 ¶ 18. The State argues that video evidence can constitute direct evidence of the crime, citing
 
 Golden v. State
 
 . Golden was a cashier at a casino.
 
 Golden v. State
 
 ,
 
 860 So.2d 820
 
 , 821 (Miss. Ct. App. 2003). One evening, after Golden had left her post and exited the casino, "casino officials discovered that her cash drawer was short over $19,000."
 

 Id.
 

 At trial, the State presented video footage showing her taking the money from her drawer and delivering it to her sister.
 

 Id.
 

 at 823
 
 . The Mississippi Court of Appeals upheld her conviction: "[v]ideotape evidence submitted to the jury of an accused's unlawful acts constitutes direct evidence."
 

 Id.
 

 In concluding that the videotape evidence was direct evidence, the Court of Appeals relied on
 
 Haynes v. State
 
 , in which this Court had affirmed a conviction for burglary where the defendant had hidden in the restroom of a Junior Food Mart in Aberdeen, Mississippi, "with the express purpose of stealing from the store once it closed."
 
 Haynes v. State
 
 ,
 
 744 So.2d 751
 
 (Miss.1999). This Court affirmed Haynes's conviction and sentence because, "[i]n addition to the testimony of the officers who arrested Haynes, the jury was also presented with a videotape of Haynes dragging a garbage bag full of stolen goods around the store."
 

 Id.
 

 at 753
 
 .
 

 ¶ 19. But, in both
 
 Golden
 
 and
 
 Haynes
 
 , surveillance video had captured the nefarious misdeeds of the parties. In those cases, the video footage captured the gravamen of the crimes as they were being committed. The circumstantial evidence in the present case, albeit copious, does not reach beyond the realm of the inferential. The surveillance videos here showed only Moore's encounter with Smith in the Syncreon parking lot and the close proximity of Moore's vehicle to Smith's just before Smith's vehicle careened out of control. An inference arises from this circumstantial evidence that Smith did, in fact, shoot Moore. But inferences do not amount to direct evidence.
 

 ¶ 20. Because the State adduced no direct evidence of Moore's guilt, the trial court's refusal of Moore's sought circumstantial evidence jury instruction was an abuse of discretion. Accordingly, we reverse Moore's conviction and sentence and remand the case to the Circuit Court of DeSoto County for a new trial.
 

 ¶ 21. The dissent calls for the abolition of the circumstantial evidence jury instruction. But as the dissent recognizes, that view has been rejected by a majority
 of this Court no fewer than five times.
 
 See
 

 Burleson v. State
 
 ,
 
 166 So.3d 499
 
 , 514 (Miss. 2015) (Pierce, J., dissenting);
 
 Stringfellow v. State
 
 ,
 
 595 So.2d 1320
 
 , 1322 (Miss. 1992) (Pittman, J., concurring);
 
 King v. State
 
 ,
 
 580 So.2d 1182
 
 , 1192 (Miss. 1991) (Banks, J., concurring)
 
 Montgomery v. State
 
 ,
 
 515 So.2d 845
 
 , 849 (Miss. 1987) (Robertson, J., concurring);
 
 Mack v. State
 
 ,
 
 481 So.2d 793
 
 , 796 (Miss. 1985) (Robertson, J., concurring). And " '[a] former decision of this court should not be departed from[ ] unless the rule therein announced is not only manifestly wrong, but mischievous.' "
 
 McDaniel v. Cochran
 
 ,
 
 158 So.3d 992
 
 , 1000 (Miss. 2014) (quoting
 
 Caves v. Yarbrough
 
 ,
 
 991 So.2d 142
 
 , 151 (Miss. 2008) ).
 
 See
 

 Stone v. Reichman-Crosby Co.
 
 ,
 
 43 So.2d 184
 
 (Miss. 1949) (" '[I]t is the manifest policy of our courts to hold the doctrines of stare decisis subordinate to legal reason and to depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error.' ") (quoting 14 Am. Jur. 2d § 124).
 

 ¶ 22. This Court long has stood by the precept that, "[w]here the State 'is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged,' the defendant is entitled to an instruction requiring the jury to 'exclude every other reasonable hypothesis other than that of guilt before a conviction can be had.' "
 
 Burleson v. State
 
 ,
 
 166 So.3d 499
 
 , 509 (Miss. 2015) (quoting
 
 Mack v. State
 
 ,
 
 481 So.2d 793
 
 , 795 (Miss. 1985) ;
 
 Pettus v. State
 
 ,
 
 200 Miss. 397
 
 , 411,
 
 27 So.2d 536
 
 , 540 (1946) ). Nevertheless, the dissent calls for its abolition and argues that the rule's application is mischievous. It undergirds this claim by opining that the trial court's failure to give a circumstantial evidence instruction is subject to a harmless error analysis.
 

 ¶ 23. The dissent argues that, "the United States Supreme Court says mandatory reversal applies only to a very limited class of fundamental constitutional errors-not one of which is in play here." Diss. Op. ¶ 47 (citing
 
 Neder v. United States
 
 ,
 
 527 U.S. 1
 
 , 7,
 
 119 S.Ct. 1827
 
 ,
 
 144 L.Ed.2d 35
 
 (1999) (holding that the failure to instruct the jury on every element of the crime charged is subject to harmless error analysis). But in
 
 Neder
 
 , the United States Supreme Court "held it to be harmless error when the defendant was found guilty of tax crimes despite the fact that the jury was not instructed on one element of the offense-the materiality of false statements made by the defendant."
 
 Harrell v. State
 
 ,
 
 134 So.3d 266
 
 , 271 (Miss. 2014) (citing
 
 Neder
 
 ,
 
 527 U.S. at 6-7, 10
 
 ,
 
 119 S.Ct. 1827
 
 ). The
 
 Neder
 
 Court was not asked whether failure of the trial court to give a circumstantial evidence instruction in a circumstantial evidence case could be subject to harmless error analysis.
 

 ¶ 24. In
 
 Stringfellow v. State
 
 ,
 
 595 So.2d 1320
 
 , 1322 (Miss. 1992), this Court declined to abolish the circumstantial evidence instruction, holding that, while "[a] number of other jurisdictions have abolished the circumstantial evidence instruction, [ ] we are of the opinion that there are still times and cases where, to secure protection of the accused's right to a fair trial, the instruction should be given." The dissent's statement that the
 
 Stringfellow
 
 majority "dodged the issue" of harmless error misrepresents that Court's holding. Diss. Op. ¶ 49.
 

 ¶ 25. The
 
 Stringfellow
 
 Court declined to apply harmless error and held that the circumstantial evidence instruction should have been given "to secure protection of the accused's right to a fair trial ...."
 
 Stringfellow
 
 ,
 
 595 So.2d at 1322
 
 . So it is not accurate, as the dissent avers, that our cases apply "circular reasoning" and they deduce that "the failure to give a circumstantial-evidence instruction must be
 harmful because a majority of this Court insists circumstantial-evidence instructions are required." Diss. Op. ¶ 49.
 

 ¶ 26. Circumstantial evidence instructions exist to ensure that, in cases in which the prosecution is without either a confession from the defendant or an eyewitness to the gravamen of the offense charged, a fair trial is had. A set of facts could arise in which this Court finds the trial court's failure to give a circumstantial evidence jury instruction in a circumstantial evidence case to have been harmless error. But today's case does not present such a fact pattern and we decline to speculate about a hypothetical scenario.
 

 ¶ 27. The dissent continues: "[T]he [United States] Supreme Court says circumstantial-evidence instructions are
 
 unnecessary
 
 if the jury is appropriately instructed on the State's burden of proof-'If the jury is convinced beyond a reasonable doubt, we can require no more.' " Diss. Op. ¶ 55. (quoting
 
 Holland v. United States
 
 ,
 
 348 U.S. 121
 
 , 140,
 
 75 S.Ct. 127
 
 ,
 
 99 L.Ed. 150
 
 (1954) ). But it does not follow that United States Supreme Court precedent compels state courts "to follow the minimum standard that the federal government has set for itself. We are empowered by our state constitution to exceed federal minimum standards of constitutionality ...."
 
 Downey v. State
 
 ,
 
 144 So.3d 146
 
 , 151 (Miss. 2014) (holding that "[b]ecause ... Downey invoked her right to counsel ... and ... her
 
 Miranda
 
 rights were violated when the interrogating officer continued his questioning without having her attorney present, the trial judge abused his discretion by denying Downey's motion to suppress ....").
 

 ¶ 28. In cases in which the State has neither a confession from the defendant nor an eyewitness to the gravamen of the offense charged, it can hardly be said that requiring the State to exclude every
 
 reasonable
 
 hypothesis consistent with innocence is a more onerous burden. Circumstantial evidence benefits the State by allowing the jury to find the defendant guilty beyond a reasonable doubt by inference, as long as the State's evidence excludes every
 
 reasonable
 
 hypothesis consistent with innocence. Able prosecutors know that a solid circumstantial evidence case is to be preferred over one with an abundance of inebriated, or otherwise dubious, eyewitnesses, or one in which there is a shaky confession of questionable veracity or uncertain admissibility.
 

 ¶ 29. The dissent argues that the failure to instruct the jury in this case amounted to harmless error because the evidence against Moore was overwhelming. Diss. Op. ¶ 56. The dissent goes on to accuse the Court of ignoring the harmless error standard: "To completely duck these facts and the overwhelming evidence of Moore's guilt, giving absolutely no analysis of any resulting harm from excluding the instruction, rings hollow and very dismissive." Diss. Op. ¶ 36.
 

 ¶ 30. The jury was instructed on first degree murder, second degree murder, and manslaughter. The jury did not find Moore guilty beyond a reasonable doubt of first degree murder.
 
 [3]
 
 Instead, the jury found Moore guilty beyond a reasonable doubt of second degree murder.
 
 [4]
 
 We decline
 to hypothesize whether the failure of the trial court to give a circumstantial evidence instruction contributed to the jury's finding Moore guilty of a lesser crime than that charged in the indictment, first degree murder. Clearly, the jury was not convinced that the State had proven, beyond a reasonable doubt, that the shooting was "done with deliberate design to effect" Smith's death.
 

 CONCLUSION
 

 ¶ 31. Because the trial court erred by denying Moore the circumstantial evidence jury instruction to which he was entitled, we reverse his conviction and remand the case to the Circuit Court of DeSoto County for a new trial.
 

 ¶ 32.
 
 REVERSED AND REMANDED.
 

 WALLER, C.J., KING, COLEMAN AND ISHEE, JJ., CONCUR. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND BEAM, J. CHAMBERLIN, J., NOT PARTICIPATING.
 

 Various surveillance videos were played for the jury.
 

 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966).
 

 Mississippi Code Section 97-3-19(1)(a) defines "first-degree murder" as: "[t]he killing of a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being ...."
 
 Miss. Code Ann. § 97-3-19
 
 (1)(a) (Rev. 2014).
 

 Mississippi Code Section 97-3-19(1)(b) defines "second-degree murder" as:
 

 The killing of a human being without the authority of law by any means or in any manner ... [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual ....
 

 Miss. Code Ann. § 97-3-19
 
 (1)(b) (Rev. 2014).