# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00725-COA

**EVERETT MOORE A/K/A EVERETT S. MOORE A/K/A ERIC MOORE**          APPELLANT

**v.**

**STATE OF MISSISSIPPI**          APPELLEE

DATE OF JUDGMENT:          03/28/2019
TRIAL JUDGE:          HON. CELESTE EMBREY WILSON
COURT FROM WHICH APPEALED:          DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
          BY: GEORGE T. HOLMES
ATTORNEYS FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
          BY: MATTHEW WYATT WALTON
          ASHLEY SULSER
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:          AFFIRMED - 06/23/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE BARNES, C.J., LAWRENCE AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     A DeSoto County Circuit Court jury convicted Everett Moore of second-degree murder. The circuit court sentenced Moore to a term of forty years, with thirty years to serve in the custody of the Mississippi Department of Corrections (MDOC) followed by ten years of post-release supervision. Moore appealed. *Moore v. State*, 247 So. 3d 1198 (Miss. 2018). The Mississippi Supreme Court reversed Moore's conviction and remanded for a new trial, finding that the circuit court erred by refusing Moore's requested circumstantial-evidence jury instruction. *Id*. at 1205 (¶31).

¶2. On remand, Moore was re-tried on February 19-21, 2019. After receiving a circumstantial-evidence jury instruction, the jury in his second trial found Moore guilty of second-degree murder. The circuit court sentenced Moore to serve thirty years in the MDOC's custody followed by five years of reporting post-release supervision and five years of non-reporting supervision. Moore again appeals. Finding no error, we affirm.

FACTS[1] AND PROCEDURAL HISTORY

¶3. On September 29, 2015, Moore drove to Syncreon Industries, located on Kirk Road in DeSoto County, Mississippi. Moore parked his vehicle and waited for Syncreon employee Norris Smith to come to his car in the parking lot. When Smith came out of the building at midday, Moore moved his vehicle to block Smith's exit and confronted Smith over an alleged affair between Smith and Moore's wife. Once the conversation ended, Moore moved, Smith pulled out of the parking lot, and Moore quickly followed, driving erratically to catch up with Smith. Moore eventually pulled alongside Smith's car. Shortly thereafter, Moore made an abrupt turn onto Polk Lane, and Smith's car proceeded straight through a red light at the intersection of Polk Lane and Kirk Road before crashing into the premises of a nearby business. Witnesses to the crash found Smith's driver's side window shattered and Smith dead in his vehicle, having suffered two gunshot wounds.

¶4. Officer Walter Medford of the Olive Branch Police Department was the first to

---

[1] The facts are taken from the record of Moore's second trial. Although the facts largely mirror those developed in the record of Moore's first trial, as described by the supreme court on appeal, *see Moore*, 247 So. 3d at 1199-1021 (¶¶1-12), the second trial featured some differences in testimony and evidence. Those differences are not relevant to the issues before us.

respond to the scene. Officer Medford testified that he found a white Nissan Altima with a shattered driver's side window near the Prime Automotive building located on Kirk Road. Officer Medford stated that there was an unresponsive male slumped over in the driver's seat, who appeared to have suffered a gunshot wound to the head. Officer Medford further testified that the male had no pulse.

¶5. The investigation was transferred to the DeSoto County Sheriff's Office because the incident did not occur within Olive Branch's city limits. Detective Roger Hutchins of the sheriff's office responded to the scene. He testified during Moore's trial that he found bullet fragments and a Syncreon Industries employee's badge in the vehicle. The badge identified the deceased driver as Norris Smith. A few hours later, Detective Hutchins interviewed Smith's wife, who, "right off the bat," knew that Moore was the shooter. Smith's wife explained to Investigator Hutchins that there had been an ongoing problem between Moore and Smith because Moore accused Smith of having an affair with his wife.

¶6. Detective Steve English testified that he assisted in gathering and reviewing surveillance video footage from surrounding businesses for the investigation. Detective English testified that video footage obtained from Syncreon Industries depicted Moore's parked vehicle—a white SUV—in the Syncreon parking lot around 11:30 a.m. on September 29, 2015. Thirty minutes later, Smith entered the parking lot and walked to his car. Once Smith reached his vehicle, Moore pulled out of his parking spot a few spaces down from Smith's and maneuvered his SUV to block Smith's vehicle from exiting its parking space. Moore then exited his SUV, approached Smith's vehicle, and engaged Smith in a brief

conversation. After this conversation, Moore returned to his vehicle and moved it. Smith then pulled out of Syncreon's parking lot, made a right-hand turn on Kirk Road, and proceeded westbound toward Polk Lane. Shortly thereafter, Moore sped out of the parking lot and followed Smith.

¶7. Surveillance footage obtained from nearby Anda Pharmaceuticals showed Moore's vehicle following closely behind Smith on Kirk Road, eventually becoming side-by-side. Smith's vehicle then hit a curb and bounced back into the roadway, causing Moore to slow down. A different camera angle from Anda Pharmaceuticals's premises captured Smith's vehicle running through a red light at the intersection of Polk Lane and Kirk Road, nearly hitting an orange 18-wheeler, before continuing on Kirk Road toward the Prime Automotive building. The same camera showed Moore following Smith through the stoplight before making a sudden, sharp left turn onto Polk Lane.

¶8. Moore quickly became a person of interest. That same evening, Moore turned himself in to the Benton County Sheriff's Office, and Detective Hutchins traveled to Benton County to interview Moore. After Moore waived his *Miranda*[2] rights, Moore admitted that he was present in Olive Branch earlier that day and that he spoke to Smith in the parking lot. Moore stated that after the conversation concluded, he got back in his vehicle and never saw Smith again. Subsequently, Moore's vehicle was searched. Detective Hutchins testified that he found a bucket of cleaning materials in the vehicle and noted that Moore's vehicle was "immaculate" and smelled like it had recently been cleaned.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

¶9. A DeSoto County grand jury indicted Moore for first-degree murder on March 10, 2016. After a trial, the jury found Moore guilty of second-degree murder. The DeSoto County Circuit Court sentenced Moore to a term of forty years, with thirty years to serve in the MDOC's custody followed by ten years of post-release supervision. *Moore*, 247 So. 3d at 1201 (¶12). Moore appealed his conviction. *Id*. The supreme court addressed only "the dispositive question of whether the trial court erred in refusing Moore's tendered circumstantial evidence instruction." *Id*. The supreme court held that Moore was entitled to a circumstantial-evidence jury instruction and concluded that the circuit court erred by denying Moore's proffered instruction. *Id*. at 1205 (¶31). The supreme court therefore reversed Moore's conviction and remanded his case for a new trial. *Id*.

¶10. Moore's second trial began on February 19, 2019. Officer Medford testified again concerning the initial crime scene and investigation. The State also introduced the surveillance video footage collected during the investigation. Detective English described the contents of the footage as the videos were played for the jury, beginning with Moore and Smith's encounter[3] in the Syncreon parking lot through Moore's pursuit of Smith on Kirk Road. The State read Detective Hutchins's prior sworn testimony concerning his conversation with Smith's wife to the jury as well.

¶11. Several witnesses testified about what they observed on September 29, 2015. Esau Fant, a former employee at Prime Automotive, testified that during his lunch break, he heard two gunshots as he entered the Prime Automotive parking lot. Fant stated that "[not] even

---

[3] The video played for the jury showed Moore and Smith having a conversation but did not capture audio of their conversation.

ten minutes" after hearing the gunshots, a vehicle rolled through the intersection of Polk and Kirk. Fant testified that he initially "thought that whoever was in the car was having a seizure." But when Fant approached the vehicle, he noticed that the driver's window was shattered and that the driver "appeared dead." Fant testified that he "was too nervous" to dial 911, so his coworker called to report the incident.

¶12. Jonathan Young testified that he was traveling southbound on Polk Lane during his lunch break that day and was nearly rear-ended by a "white or silver SUV." Young stated that the driver of the SUV then "jerked [the] vehicle into the turn lane in the middle" of the road. Young stated that the driver appeared "distracted" and was "digging over in the passenger seat." Young testified that he made eye contact with the driver as the SUV passed his vehicle. Young "thought something was strange about the whole situation," so he "took a memory note" of the SUV's Benton County license plate. Young stated that when he returned to work that day, he noticed officers at the crime scene. Young approached one of the officers and informed him that Young "had seen a guy leaving that area at a high rate of speed, and [he] gave them the . . . tag information that [he] saw." Young also identified Moore in court as the driver of the SUV.

¶13. Dr. Brent Davis, a forensic pathologist, assisted in the review process of Smith's autopsy. Dr. Davis concluded that Smith's death was a homicide and testified that Smith had suffered a gunshot wound to the head and to the chest. Dr. Davis explained to the jury that Smith was shot from "less than a few feet away" because of the abrasions and burns found on Smith's skin.

6

¶14. After the proof in Moore's second trial, the court gave instructions to the jury on circumstantial evidence, second-degree murder, and manslaughter. The jury found Moore guilty of second-degree murder. The circuit court sentenced Moore to thirty years in the custody of the MDOC followed by five years of post-release reporting supervision and five years of non-reporting supervision. On March 1, 2019, Moore filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which the circuit court denied.

¶15. Moore now appeals, contending that the State's evidence was insufficient for conviction, that the verdict was against the weight of the evidence, and that the circuit court abused its discretion by sua sponte striking a prospective juror for cause. Additionally, Moore's trial attorneys (who are not counsel of record on appeal) filed a motion pursuant to Rule 29(a)(2) of the Mississippi Rules of Appellate Procedure for leave to file an amicus brief to assert an additional issue, double jeopardy, based on the supreme court's recent decision in *Nickson v. State*, 293 So. 3d 231 (Miss. 2020).[4] We address each of these issues in turn. Finding no error, we affirm.

DISCUSSION

## I. Sufficiency and Weight of the Evidence

---

[4] Moore's trial attorneys filed their motion on May 5, 2020, attaching the proposed amicus brief to the motion. According to Rule 29(b), "[a] motion for leave to file an amicus brief shall be filed no later than seven (7) days after filing of the initial brief of the party whose position the amicus brief will support." M.R.A.P. 29(b). Moore filed his initial brief on September 5, 2019. The amicus motion was thus filed eight months after Moore filed his initial brief. Moore's trial attorneys offer no explanation as to why the amicus motion was untimely. However, because the amicus brief is grounded on *Nickson*, which was issued after briefing in Moore's appeal was complete, and because neither Moore's appellate counsel nor the State objected to the motion, we grant the motion for leave to file the amicus brief and consider the merits raised therein.

7

¶16.    Moore first asserts that the evidence introduced at trial was insufficient to convict him of second-degree murder.  "When reviewing a case for sufficiency of the evidence, 'all credible evidence that is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence.'" *Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss. 2018) (quoting *Burrows v. State*, 961 So. 2d 701, 705 (¶9) (Miss. 2007)).  We must affirm the conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (internal quotation mark omitted) (quoting *Shelton v. State*, 214 So. 3d 250, 256 (¶29) (Miss. 2017)).

¶17.    In Moore's first appeal, the supreme court found that the evidence presented at trial was purely circumstantial because "the State [had] neither a confession from [Moore] nor an eyewitnesses to the gravamen of the offense charged[.]" *Moore*, 247 So. 3d at 1204 (¶28); *but see id*. at 1210 (¶53) (Maxwell, J. dissenting) (cataloguing "overwhelming" "evidence supporting the verdict").  Because Moore was not granted an appropriate circumstantial-evidence jury instruction, the supreme court reversed Moore's conviction and remanded for a new trial.  *Id.* at 1205 (¶31).  The jury received such an instruction during Moore's second trial, and Moore does not challenge the jury instructions in the instant appeal.  Instead, Moore argues that the circumstantial evidence in his case "does no more than create a suspicion of his involvement in Smith's death" and was insufficient to convict him of second-degree murder.  We disagree.

¶18.    Just because "the only evidence supporting a conviction is circumstantial does not

mean the evidence is insufficient." *Walton v. State*, 642 So. 2d 930, 932 (Miss. 1994). The supreme court has "consistently held that the State may prove a crime solely by circumstantial evidence." *Id*. In such cases, the circumstantial evidence must be "sufficient to prove the defendant's guilt beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence." *Id*. (citing *Fleming v. State*, 604 So. 2d 280, 288 (Miss. 1992)).

¶19.     Here, the record reveals more than ample evidence to support Moore's conviction for second-degree murder. Detective Hutchins's prior sworn testimony substantiated Moore's motive to kill Smith. He testified that shortly after officers identified Smith as the deceased, Hutchins had a conversation with Smith's wife, and she knew "right off the bat" that Moore was the shooter because "there had been an ongoing problem with [Moore] accusing [Smith] of having an affair with his wife." The surveillance video footage introduced by the State captured Moore and Smith's initial encounter in the Syncreon Industries parking lot and Moore's pursuit of Smith that ensued thereafter. The video footage showed Moore's erratic driving, which was corroborated by eyewitness Young. He testified that he was almost rear-ended by the driver of a "white or silver SUV" and identified Moore in court as the driver. The jury also watched video footage of Moore and Smith's vehicles side-by-side before both vehicles ran the red light at the intersection of Polk and Kirk and Smith's vehicle "rolled down" Kirk Road onto the campus of Prime Automotive. Further, eyewitness Fant testified that he heard two gunshots "[not] even ten minutes" before he saw Smith's vehicle "roll down" Kirk Road and found the deceased driver behind the wheel. Lastly, Dr. Davis

9

established the manner of death, testifying that Smith "died from multiple gunshot wounds and was shot from less than a few feet away" based on the abrasions and burns surrounding Smith's wounds.

¶20.	Viewing this evidence in the light most favorable to the prosecution, a reasonable jury could find Moore guilty of second-degree murder beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Therefore, the evidence was sufficient and Moore's contention to the contrary lacks merit.

¶21.	Moore also asserts that the verdict is against the overwhelming weight of the evidence. In reviewing such an argument, we do not "assume[] the role of juror on appeal. We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). Instead, we "weigh the evidence in the light most favorable to the verdict" and "only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at 292 (¶21).

¶22.	Moore fails to support his position with any argument or authority. *Cf. McClain v. State*, 625 So. 2d 774, 781 (Miss. 1993) (noting that a "failure to cite authority may be treated as a procedural bar, and we are under no obligation to consider the assignment"). Regardless, Moore's assertion lacks merit for the same reason his challenge to the sufficiency of the evidence fails. Based on the substantial proof detailed above, Moore's guilty verdict is not against the overwhelming weight of the evidence and does not "sanction an

10

unconscionable injustice." Accordingly, we find no error in the circuit court's denial of Moore's motion for a new trial based on the weight of the evidence.

## II.     Sua Sponte Juror Strike

¶23.    Moore also contends that the circuit court abused its discretion by striking Juror 52 for cause. During voir dire, the circuit court asked prospective jurors whether any of them or their family members had been represented by any of the attorneys representing the State or Moore. Juror 172 identified Luke Williamson, one of the assistant district attorneys on the case, as representing her in the past. The trial court proceeded to ask Juror 172 whether she could be fair and impartial in this case, and she replied, "[a]bsolutely." Similarly, Juror 52 stated that John Watson, one of Moore's attorneys, had represented her in her divorce. The trial court did not question Juror 52 about her ability to remain fair and impartial. However, after voir dire was complete, the court, sua sponte, struck both Juror 52 and Juror 172 for cause because of their prior affiliations with attorneys on the respective sides of Moore's case.

¶24.    Moore contends that the circuit court abused its discretion by striking Juror 52 for cause without further inquiring about her ability to remain fair and impartial. Citing *Martin v. State*, 592 So. 2d 987, 988 (Miss. 1991), Moore argues that to justify a strike for cause, there must be "a clear showing that the prospective juror would be unable to follow the court's instructions and obey his oath."

¶25.    "Generally, a juror removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or his impartiality at trial." *Berry*

11

*v. State*, 703 So. 2d 269, 292 (¶85) (Miss. 1997). A trial judge's decision on juror selection is only subject to reversal if there is "a clear abuse of discretion." *Adkins v. Sanders*, 871 So. 2d 732, 740 (¶31) (Miss. 2004). "The Mississippi Supreme Court has noted that 'a defendant does not have a vested right to any particular juror but only the right to be tried by a fair and impartial jury.'" *Ward v. State*, 283 So. 3d 258 262 (¶12) (Miss. Ct. App. 2019) (quoting *Smith v. State*, 724 So. 2d 280, 328 (¶193) (Miss. 1998)).

¶26. The record reflects that the circuit court struck Jurors 172 and 52 for cause after they each indicated that they had been represented by counsel in Moore's case. "The decision to strike one, neither, or both of the prospective jurors [is] within the purview of the circuit court's decision-making duties." *Id*. at (¶13). While Moore undoubtedly has the "right to be tried by an impartial jury," he does not have the right to have a particular juror, namely Juror 52, on the jury. *Id*. at (¶12). Moore fails to make any showing that his right to a fair and impartial jury was violated in this case, whether because of the circuit court's sua sponte for-cause strike of Juror 52, or otherwise. If anything, the record indicates that the circuit court treated both sides fairly, by striking both Jurors 172 and 52 for cause. We therefore find no abuse of discretion by the circuit court.

### III. Double Jeopardy

¶27. In their amicus brief, Moore's trial attorneys raise an additional issue on appeal: whether Moore's second trial under the original indictment for first-degree murder was a double-jeopardy violation. Relying on a recent supreme court decision, *Nickson*, 293 So. 3d at 237 (¶22), they contend that because Moore was not convicted on the charged offense of

12

first-degree murder during his first trial, he could not be re-tried on remand under the original indictment. We disagree and conclude that, if anything, *Nickson* actually undermines Moore's counsel's argument.

¶28.    In *Nickson*, the defendant was charged with two counts of first-degree murder and one count of possession of a firearm by a felon. *Id*. at 233 (¶3). The jury acquitted Nickson on both first-degree murder counts, but after further deliberations, the jury deadlocked on the lesser-included offense of second-degree murder and the felon-in-possession charge. *Id*. at 234 (¶¶5-6). Despite the jury's announced verdict of acquittal on the charged first-degree murder counts, the trial court declared a mistrial on all counts. *Id*. at (¶6). On appeal, Nickson argued that he could not "be retried for first-degree murder because the jury acquitted him of that offense. He claim[ed] that because the jury returned a unanimous verdict as to first degree murder, 'a retrial on first-degree murder would violate the double jeopardy clause.'" *Id*. at 236 (¶14). The supreme court agreed, holding that "a retrial for first-degree murder would violate Nickson's constitutional right against double jeopardy." *Id*. at 237 (¶22). However, the supreme court expressly held:

> Because the jury was unable to agree on the lesser-included offense of second-degree murder and the offense of possession of a firearm as a convicted felon, the trial court properly declared a mistrial on those offenses, and that portion of the trial court's order is affirmed. Consequently, *the Double Jeopardy Clause does not prohibit a second trial on those offenses.*

*Id.* at 238 (¶25) (emphasis added).

¶29.    Here, unlike *Nickson*, Moore was never acquitted of any charge, and he was *convicted* of second-degree murder during his first trial. The supreme court reversed Moore's initial

13

second-degree murder conviction—and remanded for a new trial—because the circuit court erred in failing to give a circumstantial-evidence jury instruction. In *Nickson*, the supreme court expressly held that as to the charges against Nickson on which the jury deadlocked (including the lesser-included offense of second-degree murder), Nickson could properly be re-tried on remand. The same result obtains here. It was not a violation of double jeopardy for the State to proceed with a new trial for second-degree murder under the original indictment after Moore's initial conviction for second-degree murder was reversed. This issue is without merit.

CONCLUSION

¶30. In sum, we find that the evidence was sufficient to support the jury's conviction of Moore. Indeed, the witness testimony, surveillance video footage, and forensic evidence adduced at trial fairly thoroughly reconstructed Moore and Smith's deadly encounter on September 29, 2015. In light of that evidence, we likewise find that the verdict was not against the overwhelming weight of the evidence. We also find no merit to Moore's contention that the circuit court abused its discretion in its for-cause strikes of two jurors because Moore offers no evidence that his right to a fair and impartial jury was thereby violated. Lastly, we find that Moore was not subjected to double jeopardy during his second trial.

¶31. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**

14