**George William BREWER, Herbert Ashley Carter and Jesse Ray Ortiz, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 15482.**

United States Court of Appeals
Fifth Circuit.

July 15, 1955.

Rehearing Denied Sept. 3, 1955.

---

Howard Dailey, Dallas, Tex., David H. Cannon, Los Angeles, Cal., for appellants.

William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

The three appellants were indicted, along with a fourth defendant, Eugene Delbert Standish, for conspiracy to violate 18 U.S.C.A. § 2314, and for the substantive offense of causing to be transported in interstate commerce, "to wit, from Dallas, Texas, to Tulsa, Oklahoma, a certain falsely made, forged, and counterfeited cashier's check, to wit, a certain cashier's check dated November 12,

1953, signed G. L. Metz, drawn on the Tulsa Bank of Commerce, Tulsa, Oklahoma, and made payable to J. & B. Liquors in the sum of $10,117.00, and the said defendants, and each of them, then and there well knew the said check to have been falsely made, forged, and counterfeited." Standish pleaded guilty prior to the trial. The court, in its charge to the jury, submitted the case against the three appellants only on Count 2 charging the substantive offense, "which in the judgment of the court adequately covers the issues raised." The jury returned a verdict finding each of the three appellants guilty, and from the judgment and sentences which followed, this appeal is prosecuted.

Standish turned State's evidence, and was the first witness for the Government. He testified that Brewer and he "were the first ones to seize the idea of using a cashier's check to buy some whiskey with, a forged cashier's check," that he then discussed it with Carter and Ortiz at the same time, the first part of November, that he and Brewer went to a printing shop in Dallas operated by a man named Williams, and engaged him to print 100 cashier's checks on the Tulsa Bank of Commerce, a nonexistent bank, bearing a picture of a bank building, which was in reality the old Republic National Bank Building of Dallas, then the Davis Building. Carter also went with Standish on a trip to the print shop, but Ortiz did not. When finally obtained, the checks were brought by Standish and Carter to Brewer's house in Dallas and turned over to Brewer. The next day all four of them got together at a drug store and discussed getting a truck as a means of transportation for the whiskey. Standish had been out the preceding Monday night to the J. & B. Liquor Store to discuss the purchase of a large quantity of whiskey, telling Roland, a part owner of that store, that a man named Bill Craig, an assumed name for Brewer, would make the final arrangements. Friday afternoon about 3:00 or 3:30, all four men drove to a truck rental company where Standish rented a truck, drove it around the corner and turned it over to Ortiz, who then followed the other three defendants until within four or five blocks of the liquor store, when the other three parked while Ortiz went on with the truck to get the liquor. The three defendants in the car drove by the liquor store while the whiskey was being loaded, parked a short distance away, and when the truck came down the street, they followed it downtown, where they left it being driven by Ortiz. Standish further testified, that the check protector used in preparing the check was obtained by Brewer, and that Brewer, Carter and he, but not Ortiz, were present when the check was made up and worked in its preparation. Standish turned the check over to Ortiz.

Williams, the operator of the printing shop in Fort Worth, testified to printing the checks upon Standish's request, that Brewer came to the shop with Standish on the first occasion, and Carter on a later trip, and that while Standish did most of the talking, "these other gentlemen cut in and had their say, too."

There was further testimony from the two partners who operated the liquor store, and from several bankers going to show the sale and delivery of the truckload of whiskey for the bogus cashier's check in the sum of $10,117.00, and the subsequent sending of the check from Dallas, Texas, to Tulsa, Oklahoma, where the discovery was made that no such bank existed as the drawee, Tulsa Bank of Commerce.

Robert S. Craig, who operates an office machinery business, produced an invoice and testified that he sold a Todd check "protectograph" to Brewer on November 12, 1953, the day before the bogus check was delivered. An FBI agent testified, that Brewer had given him a written statement in which he had denied purchasing any check protector.

One of the owners of the liquor store testified to a conversation with Ortiz when Ortiz delivered to him the bogus

cashier's check and got the truckload of liquor, in effect that he had brought a cashier's check instead of money because, "Mr. Craig didn't trust him with that much cash," that Ortiz took the cashier's check out of an envelope and handed it to the witness' partner.

Neither of the three appellants testified in his own behalf or offered any other evidence.

The points raised on appeal are: (1) denial of a motion of each appellant for a judgment of acquittal; (2) a "manifestly unfair" trial; (3) refusal of a special requested charge on the effect of circumstantial evidence; and (4) general defectiveness and insufficiency of the district court's charge on the law of the case.

 We have carefully read and considered the entire record, and find that the trial was conducted with every effort to afford the defendants a fair trial. In the absence of specific objections, the general charge of an unfair trial does not merit further discussion. Nor is it necessary to consider the general criticism of the court's oral charge to the jury, for the reason that when afforded an opportunity to object to that charge, no objection or exception was forthcoming from counsel for the defendants, except the following: "The only one we have, we except to the action of the court in failing to submit our charge on circumstantial evidence, being Charge Number One."

 The court had charged the jury that the burden was upon the Government to prove guilt beyond a reasonable doubt. There was no reversible error in refusing the circumstantial evidence charge. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127; Pereira v. United States, 5 Cir., 202 F.2d 830, 836, affirmed 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.

 As against Brewer and Carter, the evidence was amply sufficient to sustain their convictions. The jury could have inferred that time for escape with the fraudulently acquired truckload of whiskey as a result of the transportation of the bogus check from Dallas, Texas, to Tulsa, Oklahoma, was a part of their scheme; and, hence, that they caused the check to be transported in interstate commerce. As to Ortiz, the evidence is not so strong as that against Brewer and Carter to show his knowledge of the fraudulent scheme, including the interstate transportation of the check. Standish did, however, testify that he discussed the scheme with him, and the testimony of Levey, one of the owners of the liquor store, and the furtive and suspicious circumstances throughout, obvious to Ortiz or anyone else, were, we think, sufficient corroboration and evidence to authorize the jury to return a verdict of guilty against him.

The judgments are therefore

Affirmed