# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-00335-SCT

*JOHNNY NEVELS a/k/a JOHNNY WAYE NEVELS*
*a/k/a JOHNNY WAYNE NEVELS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/20/2020 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| TRIAL COURT ATTORNEYS: | RICHARD EARL SMITH, JR. |
| | GLENNARD MICHAEL WARREN, II |
| | HERBERT SMITH CARRAWAY, III |
| | LIEM ANOVA WALKER |
| | BRANAN PATRICK SOUTHERLAND |
| | JOSEPH LANE CAMPBELL |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; VACATED AND REMANDED IN PART - 08/19/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Johnny Nevels appeals his convictions on three counts of drug possession. He claims

he was entitled to a circumstantial evidence instruction, which the trial court refused. He

also argues his trial should not have proceeded in his absence.

¶2.     After reviewing Nevels's circumstantial-evidence-instruction claim, we conclude it is finally time to lay aside the false notion that, when it comes to circumstantial evidence cases, there is somehow a higher burden of proof than beyond a reasonable doubt.  In reality, there is but one burden of proof in criminal cases—guilt beyond a reasonable doubt.  Considering this certainty and longstanding precedent that circumstantial evidence is given the same weight as direct evidence and can support a jury's guilty verdict, we overrule our previous case law that has required a special instruction ramping up the burden of proof in circumstantial evidence cases.  Because the jury in this case was properly instructed on the burden of proof, we find no reversible jury instruction error.

¶3.     We also find no abuse of discretion in the trial court's determining Nevels had waived his right to be present and thus could be tried in absentia.  That said, under our rules of criminal procedure, Nevels could not waive his right to be present at his later felony sentencing.  Miss. R. Crim. P. 10.1(b)(2)(A).  Thus, it was error for the trial court to *sentence* Nevels in absentia.  We affirm Nevels's convictions on three counts of drug possession.  But we vacate his sentences and remand this case to the trial court for resentencing.  The court should sentence Nevels at a hearing during which he is present.

### Backgrounds Facts & Procedural History

¶4.     When the illegal drugs were discovered, Nevels was under supervised parole.  He had appeared at the Warren County parole office at 5:00 p.m., just as the office was closing and a parole agent was about to lock the door.  The terms of Nevels's parole required he submit

to drug testing. As Nevels was signing in, his parole agent stopped him and instructed him to take a drug urinalysis test.

¶5. On his way to the restroom, Nevels told the officer he could not provide a urine sample because "he had just gone to the bathroom before he pulled up." After fifteen minutes passed, the officer told Nevels he would be taken into custody for violating a condition of his supervision. A physical struggle ensued, and another officer was called in to help place Nevels in custody. Once subdued, the officers frisked Nevels for weapons. During the pat down, one parole agent "felt something in [Nevels's] pockets." Inside the pockets he found "a few bullets and some [car] fuses." He also found "a pair of car keys." But the agent did not see any cars in the parking lot. He then checked the adjacent MDOC parking lot and noticed one non-MDOC vehicle—a Cadillac with no license plate, which was later discovered to have no registration tied to the Vehicle Identification Number.

¶6. The agent used the key fob found in Nevels's pocket to see if it matched the Cadillac. It did. So the agent then called the Vicksburg Police Department to stand by while the vehicle was searched. This search revealed a switchblade knife, a canister filled with pink and yellow pills, and a bag containing syringes and a crystal-like substance.

¶7. Forensic testing showed half the pills found were amphetamine and the other half were oxycodone tablets. The crystal-like substance was 11.08 grams of methamphetamine. A grand jury returned a three-count indictment charging Nevels with (Count I) possession of amphetamine, (Count II) possession of oxycodone, and (Count III) possession of

3

methamphetamine. Based on his felony criminal history, Nevels was indicted as a subsequent drug offender and as a habitual offender. Nevels was later released on bail.

¶8. Nevels appeared for two pretrial hearings. But he did not show up for his trial. The court tried him in absentia. And the jury found him guilty of all three counts. Nevels also did not appear on a later date at his sentencing hearing. At this hearing, the trial court sentenced him as a habitual offender to eight years on Count I, eight years on Count II, and twenty years with five years suspended on Count III. The judge ordered the sentences to be served consecutively.

## Discussion

¶9. Nevels appeals his convictions. He argues the keys in his pocket that opened the Cadillac where the drugs were found were not direct evidence he possessed the car. So he maintains the judge wrongly refused his proposed circumstantial evidence instruction. He also insists the trial court erred by trying him in absentia.

### I. Circumstantial Evidence Instruction

¶10. We first address Nevels's claim he was entitled to a circumstantial evidence instruction. In doing so, we finally put to rest the errant notion that there are two different burdens of proof in criminal cases—one for direct evidence cases and another for purely circumstantial cases.

¶11. We note that for years this Court has routinely tied its imposition of circumstantial evidence instructions to the incorrect notion that there is an "*arguably stricter burden of*

4

*proof placed upon the state in circumstantial evidence cases*." **Fisher v. State**, 481 So. 2d 203, 214 (Miss. 1985) (emphasis added).[1]  Indeed, Nevels's trial counsel, in arguing for a circumstantial evidence instruction, insisted the State's proposed instruction, which instructed the jury it must find Nevels guilty beyond a reasonable doubt, did not include the "correct burden."  Instead, defense counsel argued for the additional burden, requiring the jury to find Nevels guilty "to the exclusion of every reasonable hypothesis consistent with innocence."

¶12.    Essentially, the assumption underlying a circumstantial evidence instruction is that the State must do more than prove a defendant's guilt beyond a reasonable doubt in circumstantial evidence cases.  But this notion is obviously not true.  Without question, there is no higher criminal standard of *beyond* beyond a reasonable doubt.  Rather, in all criminal cases, there is but one burden of proof—guilt beyond a reasonable doubt.  Indeed, "[t]he standard of proof beyond a reasonable doubt . . . 'plays a vital role in the American scheme of criminal procedure,' because it operates to give 'concrete substance' to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding."  **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979) (quoting **In re Winship**, 397 U.S. 358, 363, 90 S. Ct. 1068, 1072, 25

---

[1] *See also* **Burleson v. State**, 166 So. 3d 499, 517 (Miss. 2015) (Pierce, J., dissenting) (lamenting that "the most problematic aspect of the [circumstantial evidence] instruction is that the additional 'reasonable hypothesis' language suggests to the jury that the State is held to a distinct and higher burden of proof in cases lacking a confession from the defendant or eyewitness testimony to the gravamen of the offense").

5

L. Ed. 2d 368 (1970)). As Justice Banks pointed out three decades ago:

> The concept of proof beyond a reasonable doubt is fully embodied in our U.S. Constitution. ***In Re Winship***, 397 U.S. 358 . . . . In ***Winship***, the Supreme Court held that the reasonable doubt standard was constitutionally required under the Due Process Clause. In making this holding, the Court reviewed: the acceptance of the practice in common law jurisdictions, the long use of the standard by the Court, and the need to reduce the risk of convicting the innocent. 397 U.S. at 361-64 . . . .
>
> *No court, however, has found a constitutional basis for a heightened burden of proof in circumstantial evidence cases. Whether proof is made by circumstantial or by direct evidence, the state must show guilt beyond a reasonable doubt.*

***King v. State***, 580 So. 2d 1182, 1193 (Miss. 1991) (Banks, J., concurring) (emphasis added).

The simple truth is that the heightened standard of proof has no foundation in our Constitution.

¶13. This Court's approach has for years created confusion for trial judges who are called to distinguish between what is often hard to discern—whether evidence is "direct" or "circumstantial." That appears to have been the debate in this case—was the evidence that Nevels possessed the keys to the Cadillac in his pocket direct or circumstantial evidence of his dominion and control over the drugs inside? As this Court has acknowledged, answering such questions is not always easy. "In many cases, the proof does not fall neatly into one of these evidentiary categories." ***Williams v. State***, 305 So. 3d 1122, 1129 (Miss. 2020). "There are too many shades of gray." ***Keys v. State***, 478 So. 2d 266, 268 (Miss. 1985). So, as in this case, trial judges have routinely been forced to make their best guess and wait to see if their subjective call turns out to be in line with a majority of this Court.

6

¶14. But most important, this heightened-standard-of-proof fiction conflicts with this Court's clear and longstanding position that circumstantial evidence and direct evidence carry the same weight. *Williams*, 305 So. 3d at 1129 ("Evidence is either direct or circumstantial. And both types of evidence carry the same weight."); *Cardwell v. State*, 461 So. 2d 754, 760 (Miss. 1984) ("Circumstantial evidence is entitled to the same weight and effect as direct evidence and this Court has upheld convictions based solely on circumstantial evidence."); *Bogard v. State*, 233 So. 2d 102 (Miss. 1970) ("[I]t is pointed out that 'circumstantial evidence, ordinarily, is entitled to the same effect and weight as direct evidence and may, in the concrete, be the more reliable and stronger.'" (quoting 23 C.J.S. *Criminal Law* § 907 (1961))). Basically, what this Court has done over the years is create two different categories—cases in which the State must prove guilt beyond a reasonable doubt and cases in which the State must additionally prove guilt to the exclusion of every reasonable hypothesis consistent with innocence. And this Court has done so based on a distinction that we have otherwise stated does not exist.

¶15. In other words, this Court has been speaking from both sides of its mouth. From one side, it has said that "circumstantial evidence is not inferior to direct evidence when all the facts are considered." *Bogard*, 233 So. 2d at 105. Yet from the other side, it has insisted that circumstantial evidence triggers a heightened burden of proof and a specially crafted jury instruction. Under stare decisis, "[a] former decision of this court should not be departed from[] unless the rule therein announced is not only manifestly wrong, but mischievous."

7

*Moore v. State*, 247 So. 3d 1198, 1203 (Miss. 2018) (alterations in original) (quoting *McDaniel v. Cochran*, 158 So. 3d 992, 1000 (Miss. 2014)). And on this issue, the Court's continued insistence on mandatory circumstantial evidence instructions and a higher burden of proof is both—manifestly wrong *and mischievous*. This Court has hypocritically touted "[c]ircumstantial evidence is entitled to the same weight and effect as direct evidence . . . ." *Cardwell*, 461 So. 2d at 760. Yet it has treated circumstantial evidence as inherently suspect, necessitating the jury be specially instructed on how to make an assessment of this evidence.

¶16.     In trying to write its way around these steadfast realities, the dissent has painted itself into a corner. It suggests the circumstantial evidence instruction is given to assist jurors to understand the reasonable doubt standard when there is no direct evidence. Diss. Op. ¶ 44. And it pitches "the 'reasonable hypothesis' language [as] part and parcel of reasonable doubt." Diss. Op. ¶ 39. But the problem with the dissent's justification is that it ignores its own stare decisis dilemma. It fails to explain how its position—that a separate instruction explaining the reasonable doubt standard is not only permitted but required in circumstantial evidence cases—does not run afoul of longstanding precedent that reasonable doubt should not be defined. *E.g.*, *Barnes v. State*, 532 So. 2d 1231, 1235 (Miss. 1988); *Gray v. State*, 351 So. 2d 1342, 1348 (Miss. 1977); *Pittman v. State*, 350 So. 2d 67 (Miss. 1977); *Boutwell v. State*, 165 Miss. 16, 143 So. 479, 483 (1932). The dissent further fails to explain why, if the "reasonable hypothesis" language is merely part and parcel with "reasonable doubt," this instruction is not mandated in every single criminal case, regardless of the evidence

8

presented. By insisting this instruction is required only when *circumstantial evidence* is involved, the dissent furthers the false premise that reasonable doubt is a higher burden in circumstantial evidence cases.

¶17. Perhaps more telling is the fact the dissenting justice had no stare decisis qualms when he joined the majority's abolishing of pre-arming instructions in this Court's recent opinion, ***Taylor v. State***, 287 So. 3d 202, 207-09 (Miss. 2020). In that case, just like this one, the decision to reject that instruction came after this Court considered a great body of law "denouncing" that instruction.[2] ***Id.*** at 208. And likewise, our decision here has not come lightly. Contrary to the dissent's accusation, our decision is certainly not "rash and reckless." Diss. Op. ¶ 36. Rather, for decades, members of this Court have written opinions seriously criticizing the wisdom of circumstantial evidence instructions, and a host of other justices have joined these critiques and calls for abolishing the instruction. *E.g.*, ***Moore***, 247 So. 3d at 1205-1212 (Maxwell, J., dissenting); ***Burleson***, 166 So. 3d at 514-20 (Pierce, J., dissenting); ***Stringfellow v. State***, 595 So. 2d 1320, 1322 (Miss. 1992) (Pittman, J., concurring); ***King***, 580 So. 2d at 1192-95 (Banks, J., concurring); ***Mack v. State***, 481 So. 2d 793, 797-98 (Miss. 1985) (Robertson, J., concurring).

¶18. An additional significant driver of these concerns has been the fact no federal court

---

[2] In 2015, in ***Hye v. State***, 162 So. 3d 750, 755 (Miss. 2015), citing the necessity "to avoid the perpetuation of pernicious error[,]" this Court also recently abolished the unsound practice of giving lesser-non-included offense instructions, after weighing years of Mississippi appellate opinions highlighting problems with that particular instruction.

permits the instruction and a heavy majority of state courts have either abandoned or refused to give circumstantial evidence instructions. *See **Holland v. United States***, 348 U.S. 121, 139-40, 75 S. Ct. 127, 137-38, 99 L. Ed. 150 (1954); ***United States v. Johnson***, 713 F.2d 633, 653 (11th Cir. 1983); ***United States v. Atnip***, 374 F.2d 720, 722 (7th Cir. 1967); ***Wood v. United States***, 361 F.2d 802, 806 (8th Cir. 1966); ***Dirring v. United States***, 328 F.2d 512, 515 (1st Cir. 1964); ***Strangway v. United States***, 312 F.2d 283, 285 (9th Cir.1963); ***Hunt v. United States***, 316 F.2d 652, 654 (D.C. Cir. 1963); ***United States v. Thomas***, 303 F.2d 561, 563 (6th Cir. 1962); ***United States v. Moia***, 251 F.2d 255, 258 (2d Cir. 1958); ***Corbin v. United States***, 253 F.2d 646, 649 (10th Cir. 1958); ***United States v. Allard***, 240 F.2d 840, 841 (3d Cir. 1957); ***Brewer v. United States***, 224 F.2d 189, 191 (5th Cir. 1955); ***State v. Logan***, 747 S.E.2d 444, 452 (S.C. 2013); ***State v. Dorantes***, 331 S.W.3d 370 (Tenn. 2011); ***Ex parte Carter***, 889 So. 2d 528 (Ala. 2004); ***State v. Humpherys***, 8 P.3d 652 (Idaho 2000); ***State v. Guthrie***, 461 S.E.2d 163 (W. Va. 1995); ***State v. Grim***, 854 S.W.2d 403 (Mo. 1993); ***State v. Jenks***, 574 N.E.2d 492, 503 (Ohio 1991), *superseded by constitutional amendment on other grounds as stated in **State v. Smith***, 684 N.E.2d 668 (Ohio 1997); ***Commonwealth v. Sanders***, 551 A.2d 239 (Pa. 1988); ***People v. Bryant***, 499 N.E.2d 413 (Ill. 1986); ***State v. Adcock***, 310 S.E.2d 587 (N.C. 1984); ***Rumph v. State***, 687 S.W.2d 489, 493 (Tex. Ct. App. 1985); ***State v. Brown***, 676 P.2d 253, 255 (N.M. 1984); ***State v. Lerch***, 677 P.2d 678, 683-90 (Or. 1984); ***Hankins v. State***, 646 S.W.2d 191 (Tex. Crim. App. 1983); ***State v. Smith***, 434 A.2d 368, 370 (Conn. 1981); ***State v. Derouchie***, 440 A.2d 146 (Vt. 1981); ***In re Standard***

*Jury Instructions in Criminal Cases*, 431 So. 2d 594 (Fla. 1981); *State v. Eagle*, 611 P.2d 1211 (Utah 1980); *State v. Turnipseed*, 297 N.W.2d 308 (Minn. 1980); *State v. O'Connell*, 275 N.W.2d 197 (Iowa 1979); *State v. Roddy*, 401 A.2d 23 (R.I. 1979); *State v. Bell*, 560 P.2d 925 (N.M. 1977); *State v. Bush*, 569 P.2d 349 (Haw. 1977); *State v. Cowperthwaite*, 354 A.2d 173 (Me. 1976); *Bails v. State*, 545 P.2d 1155 (Nev. 1976); *People v. Austin*, 523 P.2d 989 (Colo. 1974); *State v. Draves*, 524 P.2d 1225 (Or. Ct. App. 1974); *State v. Wilkins*, 523 P.2d 728 (Kan. 1974); *People v. Bennett*, 515 P.2d 466, 469 n.1 (Colo. 1973); *Henry v. State*, 298 A.2d 327 (Del. 1972); *Murray v. State*, 462 S.W.2d 438, 442-43 (Ark. 1971)); *State v. Harvill*, 476 P.2d 841, 844 (Ariz. 1970); *Allen v. State*, 420 P.2d 465 (Alaska 1966); *Holland v. Commonwealth*, 323 S.W.2d 411, 413 (Ky. 1959).

¶19.    In recognizing the legitimacy of the various concerns raised time and again in this Court that have led to abolishment of circumstantial evidence instructions by other courts, "we find that these are hardly radical thoughts." *Mack*, 481 So. 2d at 797 (Robertson, J., concurring). And we finally join the overwhelming majority of courts that reject the illogical and unsupported circumstantial evidence instruction requirement.

¶20.    We expressly overrule *Moore*, 247 So. 3d 1198, and the circumstantial evidence instruction cases on which that opinion relies. *E.g.*, *Burleson*, 166 So. 3d at 509-11; *Kirkwood v. State*, 52 So. 3d 1184, 1186-87 (Miss. 2011); *Stringfellow*, 595 So. 2d at 1322. As Justice Robertson aptly put it, "the law should not impose a distinction between direct and circumstantial evidence where, at least in the present context, none rationally exists." *Mack*,

11

481 So. 2d at 797 (Robertson, J., concurring). Instead, the jury should be "instructed that the law makes no distinction between direct and circumstantial evidence but simply requires that, before convicting a defendant, the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case." *Id.* Jurors should not be concerned about whether evidence is "direct evidence" or "circumstantial evidence." They should consider and weigh *all* of the evidence presented. And "[i]f the jury is convinced beyond a reasonable doubt, we can require no more." *Holland*, 348 U.S. at 140.

¶21. Turning to this case, the jury was instructed to weigh all the evidence before it and only convict if it found the State proved Nevels guilty beyond a reasonable doubt. The jury did just that. Thus, "we can require no more." *Id.* We affirm Nevels's conviction based on the jury's finding Nevels guilty beyond a reasonable doubt.

## II. Trial in Absentia

¶22. We next address Nevels's assertion that the trial court erred when it tried Nevels in absentia.

¶23. "Both our federal and state constitutions guarantee an accused's right to be present at every stage of his or her trial." *Hampton v. State*, 309 So. 3d 1055, 1060 (Miss. 2021) (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26). But this right may be waived. *Id.* at 1061 (citing *Taylor v. United States*, 414 U.S. 17, 19-20, 94 S. Ct. 194, 38 L. Ed. 2d 174 (1973); *Blanchard v. State*, 55 So. 3d 1074, 1077-78 (Miss. 2011)). Specifically, "a defendant may waive the right to be present at any proceeding . . . by the defendant's absence

12

from any proceeding, if the court finds that such absence was voluntary and constitutes a knowing and intelligent waiver of the right to be present." Miss. Rule Crim. P. 10.1(b)(1)(B). That is what the trial court found here—that Nevels had waived his right to be present by, in the court's words, "willfully, voluntarily, and deliberately attempt[ing] to avoid trial."

¶24. Nevels appeared at a pretrial conference on January 17, 2020. According to the record, on February 13, 2020, Nevels also appeared at a second pretrial conference. At that conference, which took place just five days before his scheduled February 18, 2020 trial, he was advised of this scheduled trial date. But when potential jurors, the State, his defense attorney, and the judge gathered to try him on February 18, Nevels did not show up for his trial. Nevels's counsel asked if the matter could be addressed in chambers. Counsel told the trial judge that his office had received a message from Nevels saying he was not going to make it to trial. Counsel then tried reaching Nevels on his cell phone, but Nevels would not answer. So counsel then called Nevels's mother to make sure he had the right number. She told him that he did. Counsel concluded by informing the judge, "I have not been able to reach him. Apparently, according to his mother, he is trapped by the high water."

¶25. After hearing this, the trial judge denied Nevels's counsel's motion for a continuance and granted the State's request that Nevels be tried in absentia. The judge later entered a written order expressly finding "the high water had not prevented [Nevels] from being present in court just five days prior. [Nevels] knew his trial date and offered no explanation or legitimate reason to show that his absence was not willful, voluntary, and deliberate."

13

Thus, the trial judge found, Nevels had waived his right to be present and could be tried in absentia.

¶26.     After review, we find no abuse of discretion. *See **Hampton***, 309 So. 3d at 1061 (applying abuse-of-discretion standard of review to trial court's finding of waiver under Criminal Rule 10.1(b)(1)(B)). Nevels knew of his trial date. And Nevels did not appear or attempt to contact the court. While Nevels's mother claimed to her son's counsel that his absence was due to high water, the trial court did not find this second-hand excuse credible since the high water in Warren County that month had not prevented Nevels from attending the pretrial conference days earlier.

¶27.     On appeal, Nevels accuses the trial court of trying him in absentia without making any inquiry. But the record shows the trial court, at the request of Nevels's counsel, conducted a hearing in chambers outside of the jury's presence. Nevels further suggests the trial court should have sent a deputy to Nevels's residence or investigated his mother's high-water claim. The trial court actually did issue a warrant for Nevels's arrest after voir dire concluded, and Nevels still had not appeared. Nevels insists this was too late, implying the warrant should have been issued first thing that morning. Nevels's preference aside, recently in ***Hampton***, we rejected the notion that the trial court is "required to send out law enforcement to look for [the defendant]." *Id.* "Under Rule 10.1(d) of the Mississippi Rules of Criminal Procedure, 'the court, by order, *may* direct law enforcement officers forthwith to bring the defendant before court.'" *Id.* (quoting Miss. R. Crim. P. 10.1(d)). But there is

14

certainly no mandate that the judge do so.

¶28.    Finally, Nevels argues the Court of Appeals opinion in **Haynes v. State**, 208 So. 3d 4 (Miss. Ct. App. 2016), directs reversal.  We disagree.  In **Hampton**, we pointed out the limited persuasive value of **Haynes**, which was decided before this Court's adoption of the Mississippi Rules of Criminal Procedure.  **Hampton**, 309 So. 3d at 1061.  Moreover, this case is factually distinct from **Haynes**.  In **Haynes**, the defendant not only notified his attorney before trial that he was having transportation issues, he also appeared before the court after trial at his sentencing hearing to corroborate the fact he was not unwilling but rather unable to make it to the court.  **Haynes**, 208 So. 3d at 6-7.  But here, beyond Nevels's voicemail to the lawyer's office that morning saying he would not be at trial, Nevels made no attempt to further contact his counsel.  Nor did he answer his attorney that morning or make any attempt to explain his absence or appear later that day.  He also failed to show up on a later date at his sentencing hearing.

¶29.    That said, we do however find the trial court plainly erred when it denied Nevels's counsel's motion to continue the sentencing hearing when Nevels also failed to show up on his sentencing date.[3]  The waiver provision of Criminal Rule 10.1(b)(1) begins by expressly

---

[3] On appeal, Nevels does not specifically challenge the denial of his motion to continue the sentencing hearing.  Neither does he invoke Rule 10.1(b)(2)(A) or otherwise assert his right to be present at his felony-sentencing hearing is unwaivable.  But "[u]nder the plain-error doctrine," this Court "can recognize obvious error which was not properly raised by the defendant and which affects a defendant's 'fundamental, substantive right.'" **Conners v. State**, 92 So. 3d 676, 682 (Miss. 2012) (quoting **Smith v. State**, 986 So. 2d 290, 294 (Miss. 2008)).

15

excepting two situations, listed in Rule 10.1(b)(2), in which the right to be present cannot be waived. Miss. R. Crim. P. 10.1(b)(1), (2). One of these two situations in which a defendant's right to be present cannot be waived is "during the imposition of his/her sentence in a felony case." Miss. R. Crim. P. 10.1(b)(2)(A). In other words, our Rule 10.1(b) makes clear that a defendant may waive his right to be present at trial. And if he does, "the trial may proceed to completion, including the return of the verdict." Miss. R. Crim. P. 10.1(c). But if he is convicted of a felony, as Nevels was, he cannot waive his right to be present at the sentencing hearing and thus must be present to be sentenced.

¶30. For this reason, though we affirm Nevels's convictions, we vacate his sentences and remand this case to the trial court for Nevels to be sentenced at a hearing during which he is present.

¶31. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

**RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., COLEMAN AND ISHEE, JJ.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶32. In 1871, this Court held that "[f]or circumstantial evidence[] to be sufficient for conviction, [it] should tend to exclude every other supposition inconsistent with the defendant's guilt, but it need not necessarily be such as to show it to be impossible that any other person could have committed the crime." ***James v. State***, 45 Miss. 572, 579 (1871). The wording of this concept has evolved over time. Its present iteration informs Mississippi

judges and lawyers that a defendant "is entitled to an instruction requiring the jury to 'exclude every reasonable hypothesis other than that of guilt before a conviction can be had'" in a purely circumstantial evidence case. *Moore v. State*, 247 So. 3d 1198, 1203 (Miss. 2018) (internal quotation mark omitted) (quoting *Burleson v. State*, 166 So. 3d 499, 509 (Miss. 2015)). However, juries are not instructed concerning the technical distinction between direct evidence and circumstantial evidence. The phrase "any other reasonable hypothesis than that of his guilt" can be traced to usage in jury instructions as early as 1856. *Browning v. State*, 30 Miss. 656, 660 (1856). Today's five-member majority discards this important part of Mississippi's well-established jurisprudence, doing injury to the doctrine of *stare decisis* in the process.

¶33. Bench and Bar are likely to wonder how the scrapping of this familiar instruction will bring improvement to the quality of justice provided by our Mississippi courts. This latest surprise from their state's highest court will help no one, and it will improve nothing. The instruction was born of a judicial desire to reduce the odds of convicting the innocent of unseen, unconfessed crimes. The shifting sands of circumstantial evidence necessitate such a safety mechanism. For example, we recently reversed and rendered a death sentence in a case in which the conviction rested entirely on circumstantial evidence because that evidence, once widely accepted as reliable, had been wholly discredited. *Howard v. State*, 300 So. 3d

1011 (Miss. 2020).[4]

¶34.    Regarding the doctrine of *stare decisis*, this Court has held that

> [F]undamental jurisprudential policy requires that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current court. This doctrine is known as stare decisis. The principle is based on the assumption that consistency and definiteness in the law are the major objectives of the legal system. ***Laurel Daily Leader, Inc. v. James***, 224 Miss. 654, 681, 80 So. 2d 770, 780-81 (1955) (Gillespie, J., special opinion). Stare decisis, however, is not immutable "but is flexible enough to allow the Court to admit . . . change under certain limited circumstances . . . where the previous rule of law would perpetuate error and wrong would result if the decisions were followed." ***Id.*** at 781. This Court has recognized that the doctrine is subordinate to legal reason and justice, and courts "will depart therefrom when such departure is necessary to avoid the perpetuation of pernicious error." ***Stone v. Reichman-Crosby Co.***, 43 So. 2d 184, 190 (Miss. 1949).

***Hye v. State***, 162 So. 3d 750, 755 (Miss. 2015). While "stare decisis is not an inexorable command[,]" ***Payton v. State***, 266 So. 3d 630, 637-38 (Miss. 2019) (internal quotation marks omitted) (quoting ***Bester v. State***, 188 So. 3d 526, 529 (Miss. 2016)), this Court has held also:

> In *stare decisis* generally, we look for error, but, finding that, we look for more and we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is "pernicious," ***Stone***[, 43 So. 2d at 190]; "impractical," ***Robinson v. State***, 434 So. 2d 206, 210 (Miss. 1983) (Hawkins, J., concurring); or is "mischievous in its effect, and resulting in detriment to the public." ***Childress v. State***, 188 Miss. 573, 577, 195 So. 583, 584 (1940). We look for "evils attendant upon a continuation of the old rule." ***Tideway Oil Programs, Inc. v. Serio***, 431 So. 2d 454, 467 (Miss. 1983).

---

[4]The type of circumstantial evidence at issue was so-called "bite mark evidence." ***Howard***, 300 So. 3d at 1015.

18

*State ex. rel Moore v. Molpus*, 578 So. 2d 624, 635 (Miss. 1991); *see also* ***Caves v.***

***Yarbrough***, 991 So. 2d 142, 151 (Miss. 2008) ("The doctrine of *stare decisis* is not new to

this Court, which in 1914 held that '[a] former decision of this court should not be departed

from, unless the rule therein announced is not only manifestly wrong, but mischievous.'"

(quoting ***Forest Prod. & Mfg. Co. v. Buckley***, 107 Miss. 897, 899, 66 So. 279 (1914))). Even

if we are of the opinion that this Court's past decision was wrongly decided, we are not to

overrule it unless it is mischievous and it results in a detriment to the public.[5] ***Land Comm'r***

***v. Hutton***, 307 So. 2d 415, 421 (Miss. 1974) ("[A] decision of this Court is binding in its

---

[5]The words of United States Supreme Court Chief Justice Roberts are enlightening about the principles of the doctrine of *stare decisis*:

> *Stare decisis* ("to stand by things decided") is the legal term for fidelity to precedent. *Black's Law Dictionary* 1696 (11th ed. 2019). It has long been "an established rule to abide by former precedents, where the same points come again in litigation; as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion." 1 W. Blackstone, *Commentaries on the Laws of England* 69 (1765). This principle is grounded in a basic humility that recognizes today's legal issues are often not so different from the questions of yesterday and that we are not the first ones to try to answer them. Because the "private stock of reason . . . in each man is small, . . . individuals would do better to avail themselves of the general bank and capital of nations and of ages." 3 E. Burke, *Reflections on the Revolution in France* 110 (1790).
>
> . . . .
>
> But for precedent to mean anything, the doctrine must give way only to a rationale that goes beyond whether the case was decided correctly.

***June Medical Services L.L.C. v. Russo***, 140 S. Ct. 2103, 2134, 207 L. Ed. 2d 566 (2020) (Roberts, C.J., concurring).

19

effect, especially so when it has been followed in other cases. Unless mischievous, resulting in detriment to the public, it will not be overruled although we are of the opinion that it was wrongfully decided." (citing **Childress**, 195 So. at 583)).

¶35.    This Court repeatedly has upheld that a defendant is entitled to a circumstantial evidence jury instruction when the evidence against him is wholly circumstantial. *See Moore*, 247 So. 3d at 1203; *Williams v. State*, 220 Miss. 800, 72 So. 2d 147 (1954); *Pettus v. State*, 200 Miss. 397, 27 So. 2d 536, 540 (1946); *Hardy v. State*, 177 Miss. 727, 172 So. 131, 131 (1937); *Warren v. State*, 166 Miss. 284, 146 So. 449, 449 (1933). Those decisions are due the respect of the doctrine of *stare decisis*. Thus, applying that venerable doctrine to this case, we should uphold and require the circumstantial evidence instruction because (1) we have done so in like cases for 150 years and there is no good reason to depart from that longstanding precedent and (2) this Court has rejected the current majority's arguments in prior cases. That said, the majority chooses to dispose of the circumstantial evidence instruction in a case that provides a compelling example of why it is needed—a conviction that depends on a single, thin sliver of circumstantial evidence, in which the judge's decision not to grant the instruction was based on an incorrect analysis by the prosecutor, who insisted emphatically that this is not a circumstantial evidence case. The defense lawyer's request for this instruction was timely, and the request was legally correct. There is no evil, no mischief, and no detriment to the public here. Simply, there is no justification for the majority's overruling of the circumstantial evidence instruction.

20

¶36. As justices of the Mississippi Supreme Court, we are not given the authority to make or repeal laws. But we are possessed of powerful control over the proceedings in our state's trial courts, including the content of the instructions given to juries concerning the law that governs and guides their decisions in civil and criminal trials. Everything we do as justices must be done carefully, cautiously, and judiciously as we maintain a solemn awareness of the far-reaching effect our decisions have, not only on litigants, but also on the public at large, now and in the future. *Stare decisis* is one of the bedrock principles that must govern our actions as members of our state's court of last resort. It is meant to restrain us from making rash and reckless decisions. It should prevent our instituting changes—even small ones—in the way things are done in our trial courts without good reason. Our judicial actions always must take place in the unhurried exercise of mature and thoughtful judgment. We should not alter or discard long-established processes simply because we can, or because we happen not to like them, or because we do not understand or appreciate the reasons they are in place. It behooves us to recognize that on any given Thursday at 1:30 p.m. (the day and time that we hand down decisions each week), any five members of this nine-member Court have the voting power to change just about anything the trial courts are required to do or not do. *Stare decisis*, and our fidelity to it, stand guard over established law and procedure, and they counsel against such precipitous changes as today's majority undertakes.

¶37. The majority's decision disembowels the doctrine of *stare decisis*. The instruction the majority so harshly decries has functioned as an essential, fundamental part of Mississippi's

21

criminal justice system since early statehood. *See James*, 45 Miss. at 579; *Warren*, 146 So. at 449; *Josephine v. State*, 39 Miss. 613, 637 (1861). For 150 years, most justices of this Court have respected the doctrine of *stare decisis* and upheld the instruction that today's five-member majority, with zealous enthusiasm, sends into permanent exile. As the Court noted in *Moore*, the argument to overrule the instruction "has been rejected by a majority of this Court no fewer than five times." *Moore*, 247 So. 3d at 1202-03; *see also Moore*, 247 So. 3d at 1198 (Maxwell, J., dissenting), *Burleson*, 166 So. 3d 499, 514 (Miss. 2015) (Pierce, J., dissenting); *Stringfellow v. State*, 595 So. 2d 1320, 1322 (Miss. 1992) (Pittman, J., concurring); *King v. State*, 580 So. 2d 1182, 1192 (Miss. 1991) (Banks, J., concurring); *Montgomery v. State*, 515 So. 2d 845, 849 (Miss. 1987) (Robertson, J., concurring); *Mack v. State*, 481 So. 2d 793, 796 (Miss. 1985) (Robertson, J., concurring). The majority's disdainful dismissal of this Court's longstanding precedent as a false or errant notion trivializes the thoughtful decisions of generations of our predecessors,[6] most of whom actually had tried criminal cases in our state courts. The majority's attack on the circumstantial evidence instruction by today's majority is entirely gratuitous. Neither party to this case has raised any question about the efficacy of the instruction, its utility, or its necessity. Such questions were not briefed by the parties. Rather, the question before us

---

[6]Since 1871 and *James*, there have been eighty-three Mississippi Supreme Court Justices, not counting the nine current members of this Court. *Mississippi Supreme Court Justices: Biography Project* (unpublished manuscript) (on file with the State Law Library of Mississippi).

regarding the instruction is not whether it is a good instruction, but whether it should have been granted or denied. Applying settled Mississippi law, there is no doubt whatsoever that it should have been granted. *See Moore*, 247 So. 3d at 1201 ("[W]here the State 'is *without a confession* and wholly *without eyewitness testimony* to the gravamen of the offense charged,' the defendant is entitled to an instruction requiring the jury to 'exclude every other reasonable hypothesis other than that of guilt before a conviction can be had.'" (emphasis added) (internal quotation marks omitted) (quoting *Burleson*, 166 So. 3d at 509)).

¶38. The same arguments espoused by today's majority have been rejected by this Court. In *Moore*, a majority of the Court upheld the legitimacy of the circumstantial evidence instruction. Justice Maxwell authored a dissenting opinion. *See Moore*, 247 So. 3d at 1211 (Maxwell, J., dissenting). In his dissent, Justice Maxwell argued that the circumstantial evidence instruction mandated a burden of proof higher than proof beyond a reasonable doubt and that it made a distinction between direct and circumstantial evidence. *Id.* Those are the same arguments Justice Maxwell asserts in his now-majority opinion. The Court rejected Justice Maxwell's rationale in *Moore*, reasoning that

> In cases in which the State has neither a confession from the defendant nor an eyewitness to the gravamen of the offense charged, it can hardly be said that requiring the State to exclude every *reasonable* hypothesis consistent with innocence is a more onerous burden. Circumstantial evidence benefits the State by allowing the jury to find the defendant guilty beyond a reasonable doubt by inference, as long as the State's evidence excludes every *reasonable* hypothesis consistent with innocence. Able prosecutors know that a solid circumstantial evidence case is to be preferred over one with an abundance of inebriated, or otherwise dubious, eyewitnesses, or one in which there is a shaky confession of questionable veracity or uncertain admissibility.

23

*Moore*, 247 So. 3d at 1204. Three years later, five members of the Court divine that the same arguments made in Justice Maxwell's *Moore* dissent have become valid and are sufficient to overturn a century and a half of our precedent. The circumstantial evidence instruction is no better or worse today than it was when *Moore* was decided in 2018. Nothing has changed; nothing but the composition of the Court. This is not the way *stare decisis* is supposed to work.

¶39. The majority rationalizes its infidelity to the doctrine of *stare decisis* by branding the circumstantial evidence jury instruction as manifestly wrong and mischievous because those justices have discovered that, according to them, it requires a burden of proof that exceeds proof beyond a reasonable doubt. Maj. Op. ¶ 15. The reasonable hypothesis instruction does not ramp up the burden of proof in criminal cases anywhere other than in the imagination of the majority. Maj. Op. ¶ 2. The instruction does not heighten the burden of proof, because the "reasonable hypothesis" language is part and parcel of reasonable doubt.

¶40. The majority's rationalization of its "heightened burden of proof" fantasy comes from concurring and dissenting opinions in Mississippi cases. *See* Maj. Op. ¶ 12 (quoting ***King***, 580 So. 2d at 1193 (Banks, J., concurring)); Maj. Op. ¶ 17 (citing ***Burleson***, 166 So. 3d at 515 (Pierce, J., dissenting)); and Maj. Op. ¶ 17 (citing ***Mack***, 481 So. 2d at 797 (Robertson, J., concurring)). The majority writer resorts to so-called "authorities," including his own dissent in *Moore*, in search of support for overruling the circumstantial evidence instruction. Maj. Op. ¶ 17. The majority relies also on federal courts and several state court decisions

24

that have abandoned the circumstantial evidence instruction as support for this Court's doing likewise. Maj. Op. ¶ 18. But the opinions on which the majority relies have no precedential value. *See* ***Buffington v. State***, 824 So. 2d 576, 580 (Miss. 2002) ("It is true that a majority of all sitting judges is required to create precedent[.]" (citing ***Churchill v. Pearl River Basin Dev. Dist.***, 619 So. 2d 900, 904 (Miss. 1993), *superseded by statute as stated in* ***Maxwell v. Jackson Cnty.***, 768 So. 2d 900 (Miss. 2000))); ***Monaghan v. Seismograph Service Corp.***, 236 Miss. 278, 108 So. 2d 721, 728 (1959) ("[W]hile we have great respect for the decisions of other state courts we feel it our duty to follow the rule that they are not necessarily binding on this Court[.]").[7]  However, a binding Mississippi authority, ***Moore***, has directly and definitively discredited this heightened burden of proof premise. *See* ***Moore***, 247 So. 3d at 1204.

¶41.    The majority misconstrues the opinions it cites. *See* Maj. Op. ¶ 12, ¶ 17. Neither of the separate opinions in ***King*** or in ***Mack*** posited that the circumstantial evidence instruction requires a heightened burden of proof. To the contrary, both explicitly stated that the

---

[7]*See also* ***Griffith v. Gulf Refining Co.***, 215 Miss. 15, 61 So. 2d 306, 307 (1952) ("It is our conception that we are free to decide for ourselves all questions arising under the common law or under the statutory provisions of this state, that we are not bound by the decisions of courts of other jurisdictions on similar questions, that it is proper for us to consider them and that we may follow them only if we are satisfied of the soundness of the reasoning by which they are supported. 21 C.J.S., *Courts*, § 204. Such decisions may have persuasive authority and we may still refuse to follow them if opposed to the public policy of this state. 14 Am. Jur., *Courts*, Section 85. They may be entitled to respectful consideration if well reasoned and are promotive of justice, but they are not technically of force as precedents and we are at perfect liberty to disregard them. ***New York Life Insurance Company v. Ware***, 171 Miss. 341, 157 So. 359, 894.")

language "to the exclusion of every reasonable hypothesis consistent with innocence" is on the same level as the beyond a reasonable doubt standard.[8] Thus, the circumstantial evidence instruction neither heightens nor lessens the burden of proof. Rather, it is an extra measure of protection afforded a defendant in a circumstantial evidence case to help ensure that a jury does not convict an innocent person.

¶42. The majority's contention that the circumstantial evidence instruction and its "reasonable hypothesis" language "run[] afoul of longstanding precedent that reasonable doubt should not be defined" is unsubstantiated and unsupported. Maj. Op. ¶ 16. This instruction and Mississippi's taboo against defining reasonable doubt have coexisted from time immemorial without running afoul of each other. *See James*, 45 Miss. at 579; *Boutwell v. State*, 165 Miss. 16, 143 So. 479, 483 (1932) ("Reasonable doubt defines itself[.]"). The majority provides no rational reason and no explanation for its claim that the circumstantial evidence instruction suddenly has become so mischievous and so detrimental to the public that it must be condemned to oblivion.

---

[8]*See Mack*, 481 So. 2d at 797 (Robertson, J., concurring) ("If an accused's guilt is established to the exclusion of every reasonable hypothesis consistent with innocence, then it may be said that he has been found guilty beyond a reasonable doubt. Conversely, if the evidence has not excluded from [a] juror's mind a reasonable hypothesis consistent with innocence, it follows that the State has not established guilt beyond a reasonable doubt. After all, what—and all—that is constitutionally required is that the accused's guilt be established beyond a reasonable doubt, *period*."); *King*, 580 So. 2d at 1193 (Banks, J., concurring) ("The language we have used, "to the exclusion of every reasonable hypothesis consistent with innocence," is just another way of saying "guilty beyond a reasonable doubt.").

¶43. The majority's comparison of this Court's having abolished the pre-arming instruction in **Taylor v. State**, 287 So. 3d 202 (Miss. 2020), to its overruling the circumstantial evidence instruction is not logical; it is an apples-to-oranges comparison. *See* Maj. Op. ¶ 17. This Court's decision to abolish the pre-arming instruction in **Taylor** was founded upon binding Mississippi case law, not merely persuasive case law, in which detriment to the public actually was occurring, providing a valid and *just* reason to depart from the doctrine of *stare decisis*. *See* **Taylor**, 287 So. 3d at 208.[9] Unlike in **Taylor**, the majority has not cited and cannot cite any decision of this Court that supports our overruling the circumstantial evidence instruction.

¶44. There is no higher burden of proof than that of proof beyond a reasonable doubt in a criminal case. But in a wholly circumstantial evidence case, there is a "necessary qualification that in order for [the defendant's] guilt to appear beyond a reasonable doubt the evidence must exclude every other reasonable hypothesis consistent with his innocence."

---

[9]The majority cites **Hye v. State**, 162 So. 3d 750 (Miss. 2015). On the basis of *stare decisis*, I dissented in that case:

> For nearly thirty years, the common law of the State of Mississippi has entitled criminal defendants to have the juries they faced instructed on lesser-related offenses for which an evidentiary basis exists. But today, the majority discards that longstanding precedent by overruling **Griffin v. State**, 533 So. 2d 444 (Miss. 1988), and its progeny. Because I would hold that the rule articulated in **Griffin** is logical, fair, and often valuable in the quest for justice, and additionally, because **Hye** presented sufficient evidence to support an accessory-after-the-fact instruction, I respectfully dissent.

**Hye**, 162 So. 3d at 764 (Kitchens, J., dissenting).

*Warren*, 146 So. at 449. This amounts to a guidepost on the evidentiary path to the prosecution's attainment of its ultimate goal: proving guilt beyond a reasonable doubt. The majority rightly emphasizes the importance of the beyond a reasonable doubt standard to the criminal justice system, presumably because it helps protect the innocent from unjust and wrongful convictions. Maj. Op. ¶ 12 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979)). The inclusion of the reasonable hypothesis language in circumstantial evidence cases helps to achieve that laudable goal. It does not connote the requirement of a higher standard of proof; rather, it is a protective measure, a tool that assists jurors in their truth-seeking process in cases devoid of eyewitnesses and confessions. Only three years ago, this Court explained that "[c]ircumstantial evidence instructions exist to ensure that, in cases in which the prosecution is without either a confession from the defendant or an eyewitness to the gravamen of the offense charged, a fair trial is had." *Moore*, 247 So. 3d at 1204. Despite the majority's contentions, circumstantial evidence instructions are not confusing. In cases in which there are no eyewitness to the alleged crime and the accused person has not admitted culpability, the circumstantial evidence instruction aids jurors in their assessment of evidence to ensure that a guilty verdict is rendered only when the jury finds that the State has satisfied each element of the crime beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. These instructions apply in purely circumstantial evidence cases only, which usually are "[w]here the State 'is without a confession and wholly without

28

eyewitness testimony to the gravamen of the offense charged[.]'" ***Moore***, 247 So. 3d at 1201 (first alteration in original) (internal quotation marks omitted) (quoting ***Burleson***, 166 So. 3d at 509)); *see also* ***DePriest v. State***, 377 So. 2d 615, 617 (Miss. 1979) ("Not being a wholly circumstantial evidence case, the trial court was correct in not giving a circumstantial evidence instruction[.]"). These instructions provide an extra layer of protection to a defendant whose guilt must be inferred from circumstances. The circumstantial evidence instruction historically has helped protect the right to a fair trial. Its function is similar to this Court's application of "heightened scrutiny [review] to all death-penalty cases to ensure the protection of the innocent and to safeguard all from the threat of unjust imprisonment and punishment." ***Batiste v. State***, No. 2019-CA-00283-SCT, 2020 WL 5739323, at *6 (Miss. Sept. 24, 2020) (Randolph, C.J., dissenting); *see also* ***Pruett v. State***, 574 So. 2d 1342, 1345 (Miss. 1990). During most of the long history of this Court, such instructions have been deemed valuable safeguards in our unending endeavor to do everything possible to assure that none but the guilty be convicted and punished. It is inconceivable that a jury instruction that has been of assistance to that process for eons of time suddenly has become mischievous and detrimental to the public. Circumstantial evidence instructions serve the cause of justice, and therefore they are antitheses of mischievousness and detriment.

¶45.    One of the majority's reasons for overturning a plenitude of ancient and recent precedent is because the instruction "creates confusion for trial judges who are called to distinguish between what is often hard to discern—whether evidence is 'direct' or

29

'circumstantial.'" Maj. Op. ¶ 13. I disagree. This Court has provided trial judges and practicing attorneys clear definitions and countless examples of what constitutes direct and circumstantial evidence. *See* **Burleson**, 166 So. 3d at 509 ("Direct evidence . . . 'must directly and not by inference implicate the accused and not just show that there has been a crime.'" (quoting **Price v. State**, 749 So. 2d 1188, 1194 (Miss. Ct. App. 1999))); **Id.** at 509 ("[E]xamples of direct evidence include an admission or confession by the defendant to a 'significant element of the offense,' or eyewitness testimony 'to the gravamen of the offense charged.'" (internal quotation mark omitted) (quoting **Kirkwood v. State**, 52 So. 3d 1184, 1187 (Miss. 2011))); **Ross v. State**, 954 So. 2d 968, 1009 (Miss. 2007) ("Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to logical inference that such fact does exist." (citing **Manning v. State**, 735 So. 2d 323, 338 (Miss. 1999))). As for the majority's argument that trial judges are *forced* to "guess and wait to see[,]" Maj. Op. ¶ 13, I would remind my colleagues of the words of Justice Truly:

> We again urge upon trial courts that they should not experiment as to how few instructions they can grant defendant and still be sustained, but should see that every right which he is guarantied under the law is liberally granted to the defendant, and leave the final decision upon the facts to the fairness and common sense of the juries. If this course is adopted an equal number of convictions will be had, more judgments will be affirmed, the interest of the state be better served, and the expenses of the courts considerably diminished.

**Thompson v. State**, 83 Miss. 287, 35 So. 689, 690 (1904).

¶46.    The majority asserts mistakenly that the circumstantial evidence instruction "conflicts with this Court's clear and longstanding position that circumstantial evidence and direct

30

evidence carry the same weight." Maj. Op. ¶ 14. The majority contends also that the jury "should not be concerned about whether evidence is 'direct evidence' or 'circumstantial evidence[,]'" and that "[t]hey should consider and weigh *all* of the evidence presented." Maj. Op. ¶ 20. The instruction makes no attempt to define or explain the differences between the two types of evidence. The terms *direct evidence* and *circumstantial evidence* are not mentioned in this or in any other jury instruction in use in the courts of our state. Rather, the instruction tells the jury that if it believes from *all* of the evidence that the defendant is guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then it should convict. Contrary to the majority's insinuations, jurors never are told by the trial court that there is a difference in direct evidence and circumstantial evidence or that one is better or more valuable than the other, because "[m]atters regarding the weight and credibility of the evidence are to be resolved by the jury." ***McClain v. State***, 625 So. 2d 774, 778 (Miss. 1993) (citing ***Neal v. State***, 451 So. 2d 743, 758 (Miss. 1984)).

¶47. Lastly, there can be no doubt that the case before us is a purely circumstantial evidence case. The circumstance of a person's having been in possession of car keys does not "go[] directly to prove the existence of a fact," *i.e.*, dominion and control over a vehicle and its contents, but rather it "gives rise to logical inference that such fact does exist." ***Ross***, 954 So. 2d at 1009 (citing ***Manning***, 735 So. 2d at 338). "[E]vidence that implicates the defendant by inference is circumstantial, without regard to how persuasive the inference appears to be." ***Moore***, 247 So. 3d at 1202. The mere possession of a set of car keys provides

circumstantial evidence of vehicle ownership and/or control because those keys will unlock and crank that vehicle. For example, the sight of a woman holding a child does not prove that the child belongs to the woman. But an inference may be made that the child belongs to the woman because she is holding him. This is circumstantial evidence because motherhood is inferred. This is what happened at Nevels's trial, except his ownership and control of a vehicle were inferred, or deduced, from the circumstance of his possession of the car's keys.

¶48.    The key fob raises numerous questions but provides precious little in the way of answers. The only evidence linking Nevels to the car is his possession of the car's keys at the time of his arrest. Is it possible that Nevels had found the key fob and keys on a sidewalk while walking to the parole office? Based solely on the evidence before the jury, is that possibility—that hypothesis—just as likely as the hypothesis that, because Nevels had a key fob that would unlock the car, the drugs were his? The reasonableness of Nevels's possession of the keys equaling ownership of the car and the drugs is for a properly instructed jury to decide, as is the question of whether that same evidence could lead to other reasonable hypotheses, one or more of which could be consistent with Nevels's innocence.

¶49.    It must be remembered that the *only* evidence that is suggestive of Nevels's guilt is the key fob. One might think that Nevels could have provided an explanation for his possession of the fob if only he had shown up to testify. Even so, neither Nevels nor any other person on trial for criminal conduct is obliged to testify or to prove his innocence. Rather, the burden is on the prosecution to prove his guilt beyond a reasonable doubt. In

purely circumstantial cases, such as this one, the necessity to protect an individual's right to a fair trial is paramount. There is good reason for "to the exclusion of every reasonable hypothesis consistent with innocence." It is meant to help guarantee, insofar as is humanly possible, that a jury is appropriately cautious in its decision-making process.

¶50.    An astute and careful attorney—Nevels's trial counsel—had no difficulty in recognizing this as a case in which the State's evidence of the defendant's guilt was entirely circumstantial. He did his best to convince the trial judge of that reality. However, the judge was persuaded otherwise by the prosecutor, who insisted—albeit incorrectly—that Nevels's possession of keys to an automobile that contained contraband made this a direct evidence case. Notwithstanding the majority's assertion that whether evidence is direct or circumstantial "is often hard to discern," Maj. Op. ¶ 13, in truth it is not. Most certainly, that determination is not at all difficult in this case. Nevels did not confess. No witness testified that he or she had seen Nevels in possession of the contraband. It is difficult to imagine an easier analysis:  no confession, no eyewitness, equals no direct evidence. The defense attorney was absolutely correct. This is a circumstantial evidence case. The majority does not contend otherwise. The State adduced no direct evidence of Nevels's guilt. Based on applicable Mississippi law as it existed on the day of Nevels's trial, and as it had existed in Mississippi's historical jurisprudence, the trial judge erred by denying the timely request of Nevels's attorney for the jurors to be instructed that they could not convict Nevels unless they were convinced by the evidence, beyond a reasonable doubt and to the exclusion of every

33

reasonable hypothesis consistent with innocence, that Nevels was guilty of the offenses charged. The only way for Nevels's convictions to be affirmed is for this Court to change the law. Five members of this Court are willing to do that.

¶51.    In the absence of direct evidence of Nevels's guilt—an eyewitness and/or a confession to the crime charged—the trial court was required to give a circumstantial evidence instruction. "A circumstantial-evidence instruction provides that the State must prove the defendant guilty beyond a reasonable doubt and *to the exclusion of all reasonable hypotheses consistent with innocence*." **McInnis v. State**, 61 So. 3d 872, 875-76 (Miss. 2011) (citing **State v. Rogers**, 847 So. 2d 858, 864 (Miss. 2003)). This Court has held repeatedly and consistently that, "[w]hen all of the evidence tending to prove the guilt of a defendant is circumstantial, the trial court must grant a jury instruction that every reasonable hypothesis other than guilt must be excluded in order to convict." **Ross**, 954 So. 2d at 1009 (citing **Manning**, 735 So. 2d at 338). Additionally, this Court has held that

> when by the nature of the State's case, the evidence is deemed to be circumstantial, the accused is entitled upon request to have the jury instructed that before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.

*Mack*, 481 So. 2d at 794-95 (citing **Keys v. State**, 478 So. 2d 266, 266 (Miss. 1985)); *see also Moore*, 247 So. 3d at 1201; **Burleson**, 166 So. 3d at 499. Here, there was no confession and no eyewitness testimony that placed Nevels in the car in which the drugs were found. Thus, "the evidence is deemed to be circumstantial," and Nevels "is entitled . . . to have the jury

instructed that before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence." *Mack*, 481 So. 2d at 794-95 (citing *Keys*, 478 So. 2d at 266).

¶52. "While we are reluctant to set aside a jury verdict of guilty, we are bound by the law to hold the state to the above described level of proof to overcome the presumption of innocence that is the hallmark of our system of criminal justice." *Hester v. State*, 463 So. 2d 1087, 1094 (Miss. 1985). "Taken in its strongest light," the State's evidence at best "presents no more than a probability" that Nevels had something to do with the crimes charged. *Id.* "Probability is not proof beyond every reasonable doubt, as is required in a circumstantial evidence case." *Id.*

¶53. The trial court erred by failing to grant Nevels's request for a circumstantial evidence instruction. The majority errs grievously by disregarding the doctrine of *stare decisis* and abolishing the circumstantial evidence instruction. The majority has failed to state a good reason for overruling the instruction and its 150 years of precedent. For these reasons, I respectfully dissent. The correct disposition of this case would be for this Court, with fidelity to its own precedent, to reverse Nevels's conviction and sentences and remand the case to the Circuit Court of Warren County for a new trial.

**KING, P.J., COLEMAN AND ISHEE, JJ., JOIN THIS OPINION.**